INTERSTATE COMMERCE COMMISSION ET AL. *v.* RAILWAY LABOR EXECUTIVES ASSN. ET AL.

No. 223.   Argued February 3, 1942.—Decided March 2, 1942.

*Mr. E. M. Reidy,* with whom *Mr. Daniel W. Knowlton* was on the brief, for the Interstate Commerce Commission; and *Mr. Frank Karr,* with whom *Messrs. J. R. Bell*

and *C. W. Cornell* were on the brief, for the Pacific Electric Railway Co., appellants.

*Mr. Willard H. McEwen,* with whom *Messrs. Frank L. Mulholland* and *Clarence M. Mulholland* were on the brief, for appellees.

MR. JUSTICE BLACK delivered the opinion of the Court.

The appellant, Pacific Electric Railway Company, owns and operates electric railroads and motor bus and truck lines in California. It is a wholly owned subsidiary of the Southern Pacific Railroad Company, with whose lines it makes connections at numerous points. It applied to the Interstate Commerce Commission for permission to carry out "a general program of rearrangement of . . . passenger service, involving abandonment of certain rail lines and substitution of motor coach transportation as a means of increasing operating revenues, reducing expenses, and rendering a more adequate service to the public." The Railway Labor Executives' Association and The Brotherhood of Railroad Trainmen appeared before the Commission as representatives of Pacific's employees. They contended that if the Commission were to grant Pacific's application, it should do so only upon conditions designed to protect employees, and proposed that Pacific be required to provide certain specified benefits for employees who would be displaced or otherwise prejudiced by the abandonment. In support of this contention, they argued that many of Pacific's employees had devoted a large part of their lives to the service of the railroad and had acquired valuable rights of seniority in connection with their employment; that the proposed change would cause many of them to lose their jobs, as a result of which they would suffer great hardships and some would become public charges; and that, although the abandonment and rearrangement would give Pacific a net annual savings

of approximately $378,000, about $302,000 of the saving would be due to a net wage loss suffered by employees. After a hearing, Division 4 of the Commission issued an order permitting abandonment upon the ground that continued operation of the line by Pacific "would impose an undue burden upon the applicant and upon interstate commerce," but held that the Commission was without statutory authority to impose any conditions whatever for the protection of employees in these proceedings. 242 I. C. C. 9. The full Commission denied the brotherhood's request for rehearing. Upon application of the brotherhoods, the Federal District Court of the District of Columbia, composed of three judges, in accordance with 28 U. S. C. § 47, held that the Commission did have authority to impose conditions for the protection of displaced employees. Accordingly, it set aside "That part of the Commission's report which denies consideration of the employees' petition for lack of power . . . with directions to the Commission to consider the petition and take such action thereon as in the discretion of the Commission is proper." 38 F. Supp. 818, 824. Whether it is within the Commission's power in abandonment proceedings to impose conditions for the protection of employees is the single question presented by this appeal.

Section 1 (18) of the Interstate Commerce Act provides that "no carrier by railroad subject to this part shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity permit of such abandonment." And § 1 (20) empowers the Commission to "attach to the issuance of the certificate such terms and conditions as in its judgment the public convenience and necessity may require." 49 U. S. C. § 1 (18)–(20).

With respect to consolidations, another section of the Act, 5 (4), is controlling. In *United States* v. *Lowden,* 308 U. S. 225, this Court held that the Commission has authority under § 5 (4) to impose conditions similar to those sought here in order to protect employees adversely affected by a consolidation. At the time of the *Lowden* case, § 5 (4) provided: "If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed consolidation . . . will promote the public interest, it may enter an order approving and authorizing such consolidation . . . upon the terms and conditions and with the modifications so found to be just and reasonable." 49 U. S. C. § 5 (4).

The Commission argues that the conditions it is authorized to impose under the consolidation section—"just and reasonable" conditions, which "will promote the public interest"—are of much broader scope than the conditions it is authorized to impose under the abandonment section—conditions which "the public convenience and necessity may require." Although admitting that provisions for the protection of displaced employees may be a condition that "will promote the public interest," the Commission concludes that such provisions cannot be required by "the public convenience and necessity." We need not decide in what respects, if any, the authorization to impose conditions in consolidations is broader than the authorization to impose conditions in abandonments. For even assuming that the language of the abandonment section is narrower, we cannot agree that it excludes all power to impose conditions of the kind sought here.

The phrase "public convenience and necessity" no less than the phrase "public interest" must be given a scope consistent with the broad purpose of the Transportation Act of 1920: to provide the public with an efficient and nationally integrated railroad system. *New England*

*Divisions Case*, 261 U. S. 184, 189–191. Clear recognition that "public convenience and necessity" includes the consideration of effects on the national transportation system of a proposed abandonment appears in the decision of this Court in *Colorado* v. *United States*, 271 U. S. 153. There, Mr. Justice Brandeis, although stating that "public convenience and necessity" was the sole criterion for determining whether or not an abandonment should be allowed, nevertheless considered the effect of the proposed abandonment in a much broader sphere than the immediate locality and population served by the trackage to be abandoned. See also *Transit Commission* v. *United States*, 284 U. S. 360. And if national interests are to be considered in connection with an abandonment, there is nothing in the Act to indicate that the national interest in purely financial stability is to be determinative while the national interest in the stability of the labor supply available to the railroads is to be disregarded. On the contrary, the *Lowden* case recognizes that the unstabilizing effects of displacing labor without protection might be prejudicial to the orderly and efficient operation of the national railroad system. Such possible unstabilizing effects on the national railroad system are no smaller in the case of an abandonment like the one before us than in a consolidation like that involved in the *Lowden* case. Hence, it is only by excluding considerations of national policy with respect to the transportation system from the scope of "public convenience and necessity," an exclusion inconsistent with the Act as this Court has interpreted it, that the distinction made by the Commission can be maintained.

It was not until 1935, fifteen years after the passage of § 1 (20), that the Commission first decided that it was without power to impose conditions for the protection of workers in an abandonment. Chicago G. W. R. Co. Trackage, 207 I. C. C. 315, 322. At that time, the Com-

mission took the position that requiring displacement allowances as a condition would be the equivalent of granting a private benefit to a particular group of workers, and therefore beyond the scope of authority granted by Congress. The Commission has taken the same position here. It must not be forgotten, however, that the immediate result of permitting the abandonment itself is a private benefit for the railroad in the form of savings realized by discontinuing uneconomic services. The justification lies in the benefit to the transportation system which the Commission concluded the abandonment would produce. There is nothing in the Act to prevent the Commission from taking action in furtherance of the "public convenience and necessity" merely because the total impact of that action will include benefits to private persons, either carriers or employees. The *Lowden* case specifically recognized that the imposition of conditions similar to those sought here might strengthen the national system through their effect on the morale and stability of railway workers generally. Exactly the same considerations of national importance are applicable and operative here.

We must also reject the further argument that Congress has ratified the Commission's construction of § 1 (18)–(20). It is true that Congress made no changes in § 1 (18)–(20) of the Interstate Commerce Act in passing the Transportation Act of 1940, and that the annual reports of the Commission to Congress in 1935 and 1936 had specifically asked "for further statutory provisions to protect employees from undue financial loss as a consequence of authorized railway abandonments or unifications." But the *Lowden* case, clearly establishing that the Commission's 1935 and 1936 doubts about its powers with respect to unifications were erroneous, was decided on December 4, 1939. Congress could with good reason have concluded that the principle of the *Lowden* case was

equally applicable to abandonments. In any event, the contrary conclusion—that abandonments were now to be distinguished, although the Commission had made no such distinction in presenting the problem to Congress, and that Congress approved such a distinction—is at best the product of a set of inferences none of which is free from doubt. We therefore cannot impute to Congress's failure to amend § 1 (18)–(20) the significance which the petitioners contend it should have.

Nor is the petitioners' contention strengthened because Congress did modify § 5 (4) in the Transportation Act of 1940. The modifications, so far as relevant here, merely made mandatory with respect to unifications the protections for workers that had previously been discretionary.[1] See *United States* v. *Lowden, supra,* 239. To regard them as a restriction on the discretionary power of the Commission with respect to abandonments is not merely illogical. It requires us to impute to Congress a policy of mandatory protection for labor in unifications and no

---

[1] "As a condition of its approval, under this paragraph (2), of any transaction involving a carrier or carriers by railroad subject to the provisions of this part, the Commission shall require a fair and equitable arrangement to protect the interests of the railroad employees affected. In its order of approval the Commission shall include terms and conditions providing that during the period of four years from the effective date of such order such transaction will not result in employees of the carrier or carriers by railroad affected by such order being in a worse position with respect to their employment, except that the protection afforded to any employee pursuant to this sentence shall not be required to continue for a longer period, following the effective date of such order, than the period during which such employee was in the employ of such carrier or carriers prior to the effective date of such order. Notwithstanding any other provisions of this Act, an agreement pertaining to the protection of the interests of said employees may hereafter be entered into by any carrier or carriers by railroad and the duly authorized representative or representatives of its or their employees." 54 Stat. 906–907.

protection at all in abandonments. It is reasonable to suppose that if Congress had intended to make such a distinction, it would have said so more explicitly.

The petitioners have made further arguments based on the statutory history of the Transportation Act of 1940, relying upon incidental and sporadic references in committee hearings and reports to the protection of labor in connection with abandonments. We have reviewed those references, and have found that they raise inferences too ambiguous to support the conclusion that Congress has ratified the Commission's construction of § 1 (18)–(20).

It is also urged that we should not disturb the Commission's construction of the abandonment provisions for the reason that administrative interpretations by the agency charged with the enforcement of a statute are entitled to great weight. But as we have pointed out, the construction placed upon § 1 (18)–(20) by the Commission is not only hostile to the major objective of the Act and inconsistent with decisions of this Court, but irreconcilable with its own interpretations of § 5 (4). Under such circumstances, we believe the court below was amply justified in refusing to accept the Commission's construction. Cf. *Mitchell* v. *United States,* 313 U. S. 80; *City Bank Co.* v. *Helvering,* 313 U. S. 121.

We therefore conclude that the Commission has authority to attach terms and conditions for the benefit of employees displaced by railroad abandonments. Whether such terms and conditions should be attached in this case, and, if so, their nature and extent, are questions for the Commission to decide in the light of the evidence. The judgment of the court below should accordingly be

*Affirmed.*