**LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Appellant,**

v.

**COMMONWEALTH of Kentucky on Relation of the KENTUCKY RAILROAD COMMISSION et al., Appellees.**

Court of Appeals of Kentucky.

July 11, 1958.

R. W. Henriott, Clarence Raymond, J. L. Lenihan, Louisville, L. W. Morris, Frankfort, C. S. Landrum, Lexington, for appellant.

Jo M. Ferguson, Atty. Gen., Seth T. Boaz, Jr., Asst. Atty. Gen., Robert E. Webb, Louisville, for appellees.

CLAY, Commissioner.

This is an appeal from a judgment confirming an order of the Railroad Commission which (1) declared appellant L & N Railroad was charging an unreasonable and unjust rate for the transportation of fine coal from West Kentucky mines to Kenlite, Kentucky, (2) fixed a lower rate, and (3) ordered L & N to pay Kentucky Light Aggregates, Inc. some $6,000 as reparations for excessive freight charges.

L & N attacks the Commission's order on several grounds, which in substance amount to this: The Commission did not apply proper legal standards to determine whether or not the existing freight rate was reasonable, and its findings are not supported by substantial evidence.

The route involved is the northern route of the L & N. Coal is brought from West Kentucky mines via Owensboro to what is known as the Strawberry Yards in Louisville. The rate for coal other than fine coal from the West Kentucky mines to Louisville is $2.25 per ton, the rate for fine coal being $1.50 per ton. The rate per ton for all coal, including fine coal, from the West Kentucky mines to Kenlite, which is nine miles south of the Strawberry Yards, is approximately $2.40. Thus, the differential for all coal other than fine coal between the mines and Louisville and the mines and Kenlite is 15 cents per ton, for fine coal the differential is 90 cents.

The Commission does not have a general rate making power, but may be called upon to act if a railroad is apparently violating the terms of a general statute. KRS 276.-280 provides that no railroad company shall charge more than a just and reasonable rate. KRS 276.310 provides that if the carrier has been guilty of charging excessive rates, the Commission may fix by order a just and reasonable rate.

The order of the Commission was based upon a written opinion in which it was found that the fine coal rate from West Kentucky to Kenlite was "discriminatory, prejudicial, unjust, unreasonable, and excessive". This opinion furnishes us the only findings and conclusions of the Commission upon which its order was based. Appellees suggest that the opinion is not

significant, and maintain it is our duty to uphold the order if we can find any reason to support it. However, it seems obvious that our review would be without direction or effectiveness unless we may examine the basic considerations of the Commission in reaching its ultimate conclusion. For this reason the opinion of the Commission is important to our review.

■ If an agency does not clearly disclose the grounds upon which its decision is based, a court will be usurped of its power of review over questions of law. See Valley & Siletz R. Co. v. Flagg, 195 Or. 683, 247 P.2d 639, 652, 653; American Broadcasting Co. v. Federal Communications Commission, 85 U.S.App.D.C. 343, 179 F.2d 437, 445; Mackler v. Board of Education of City of Camden, 16 N.J. 362, 108 A.2d 854, 858.

■ An opinion of an administrative body should set forth the basic findings of fact. State of Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291. As Mr. Justice Cardozo once stated: "We must know what a decision means before the duty becomes ours to say whether it is right or wrong". United States v. Chicago, M., St. P. & P. R. Co., 294 U.S. 499, 511, 55 S.Ct. 462, 467, 79 L.Ed. 1023.

■ KRS 276.370 provides that on court review "the findings of the commission shall be prima facie evidence as to the facts found, * * *." It is generally stated that our review is limited to determining whether there is substantial evidence to support the findings and conclusions of the Commission. Louisville & Nashville Railroad Co. v. Commonwealth, Ky., 300 S.W.2d 777. This governing principle assumes, however, *that the findings have been directed to the relevant issues in the controversy.*

It would obviously be impossible for this Court, or any court, to determine if there is substantial evidence to support the ultimate findings of the Com-

mission unless we have some criteria to determine what is and what is not relevant evidence. At the outset we are therefore confronted with the question of law as to whether or not the Commission applied proper standards in determining that the present rate from West Kentucky to Kenlite is unjust and unreasonable.

Unfortunately the legislature has not prescribed any standards to be applied in fixing just and reasonable rates. It has not set forth what factors shall be taken into consideration. Yet there must exist some governing legal principles—otherwise the Commission's action could be completely arbitrary and court review would be wholly ineffective.

■ The interpretation of a statute is a matter of law. When a statute uses a broad term such as "unjust and unreasonable", it is necessary that the administrative body and the court, as joint instrumentalities of government, fill in the factors which govern the proper determination of the question presented. In the first instance the administrative body, presumably expert in this field, must decide what are the relevant factors or standards. This determination is not conclusive on the courts because it is a decision on a question of law and is not a question of fact. However, the court will give due weight to this determination and will accept the standards adopted by the Commission if they are in accord with the statutory intent.

One of the earlier cases involving this problem, decided by the Supreme Court of the United States, is Texas & Pacific R. Co. v. Interstate Commerce Commission, 162 U.S. 197, 16 S.Ct. 666, 40 L.Ed. 940. It involved alleged unjust discrimination in railroad rates. The order of the Commission was reversed on the ground that it had failed to take into consideration ocean competition which was relevant to the determination of the question presented. In Southern Pacific Co. v. Inter-

state Commerce Commission, 219 U.S. 433, 31 S.Ct. 288, 55 L.Ed. 283, the Commission declared a railroad rate unjust and unreasonable, having taken into consideration certain lumber interests involved. The order was reversed on the ground that the lumber interests were not proper factors for the Commission to consider in determining the reasonableness of the rate.

In Interstate Commerce Commission v. Railway Labor Executives Ass'n, 315 U.S. 373, 62 S.Ct. 717, 720, 86 L.Ed. 904, the Commission's order was reversed on the ground that it had erroneously excluded certain relevant considerations in determining what constituted "public convenience and necessity". In Anchor Coal Co. v. United States, D.C., 25 F.2d 462, an order of the Interstate Commerce Commission directing certain carriers to cancel a reduced rate was reversed on the ground that the Commission improperly condemned the rate by comparing it with a different kind of traffic handled under different circumstances.

■ The foregoing cases establish the principle that a question of law for review by the courts may be presented as to whether or not an administrative body, acting under a broad and undefined statutory term, has taken into consideration irrelevant factors or has failed to take into consideration those that are relevant.

A recent case from this Court recognizes our right to review the standards applied by an administrative body in reaching its ultimate conclusion. In Middlekamp v. Willis, Ky., 267 S.W.2d 924, the Commissioner of Industrial Relations had established new minimum wage rates. Certain statutory standards had been set up, but they themselves were broad in scope. We reversed the order of the Board on the ground that it had not taken into account all of the relevant standards pertaining to what constituted a reasonable minimum wage.

We have gone into this matter somewhat at length because it poses a problem which has greatly troubled the courts for many years. See Schwartz, "Gray v. Powell and the Scope of Review", 54 Mich.L.Rev. 1. The net result is that in order for us to review the conclusion of the Commission in this case, it is necessary that we examine the opinion of the Commission to determine whether or not it considered relevant factors in reaching the conclusion that the existing rate was unreasonable and the new rate is the maximum reasonable one.

■ At the outset it may be observed that the jurisdiction of the Commission to fix a just and reasonable rate under KRS 276.310 is conditioned upon the finding that the railroad is charging *more* than a just and reasonable rate in violation of KRS 276.280. Consequently it would appear that the rate to be fixed is not what the Commission might consider the most reasonable from a compensatory standpoint but one which is the maximum that reasonably may be charged for this particular transportation service. See Lake Shore & M. S. R. Co. v. Smith, 173 U.S. 684, 698, 19 S.Ct. 565, 43 L.Ed. 858; Southern Pacific Co. v. Heltzel, 201 Or. 1, 268 P.2d 605; Southern Pacific Co. v. Interstate Commerce Commission, 219 U.S. 433, 443, 31 S.Ct. 288, 55 L.Ed. 283.

■ There is a zone of reasonableness between maximum and minimum rates within which the carrier is ordinarily free to adjust its own charges. Texas & P. R. Co. v. United States, 289 U.S. 627, 636, 53 S.Ct. 768, 77 L.Ed. 1410; United States v. Illinois C. R. Co., 263 U.S. 515, 522, 44 S.Ct. 189, 68 L.Ed. 417. Therefore the question presented is not what would give the railroad a fair minimum return on this particular transportation service, but what rate is just and reasonable under the circumstances without being extortionate.

We will now consider the opinion of the Commission. Therein the route under consideration was designated the "southern route of the L & N"; whereas, the ques-

tion in the case involved only L & N's *northern* route. The Commission takes note of the fact that over the southern route coal trains from West Kentucky proceed through Kenlite and are subsequently "brought back" from the Strawberry Yards. This misconception may have had some influence on the decision. It may also be observed that the Commission found the Kenlite rate to be "discriminatory" and "prejudicial", indicating such factors were given weight. These issues were not involved.

Throughout the opinion it is apparent the Commission considered the fine coal rate from West Kentucky to Louisville to be a very significant factor in determining what would be a just and reasonable rate to Kenlite. Whether or not the Commission properly accepted this rate as a controlling standard of comparison is a crucial issue in this case.

As we have before mentioned, the fine coal rate from West Kentucky to Louisville was $1.50 per ton. The Commission recognized this was a reduced rate put into effect in 1953 to meet competition on the Ohio River. L & N contends that it was an abnormally low or depressed rate, and a depressed rate cannot constitute a factor in fixing a just and reasonable rate.

█ It has been held that an abnormally low or depressed rate, put in effect for the purpose of meeting barge competition, cannot be used as a just standard of reasonableness. Interstate Commerce Commission v. Louisville & N. R. Co., 227 U.S. 88, 99, 33 S.Ct. 185, 57 L.Ed. 431; Louisville & N. R. Co. v. United States, 238 U.S. 1, 13, 35 S.Ct. 696, 59 L.Ed. 1177; Shaw-Fahrer Grain Co. v. Public Utilities Com. of Ohio, 126 Ohio St. 74, 183 N.E. 922; Pennsylvania R. Co. v. Public Service Commission, 126 Pa.Super. 1, 190 A. 372, 376. The Interstate Commerce Commission has also recognized this principle. Coweta Cotton Oil Co. v. L & N R. Co., 169 I.C.C. 705; Traffic Bureau, Lynchburg Chamber of Commerce v. C.

& O. Ry., 234 I.C.C. 765, 766; Rudolph Wurlitzer Co. v. C., B. & Q. R. Co., 235 I.C.C. 91, 93.

There are cogent reasons why an abnormally low rate fixed by the railroad to meet a special competitive situation should not be controlling as establishing the maximum reasonable rate the railroad may charge for transportation services in other areas. In the first place, if it were controlling, whenever the railroad reduced its rate for a particular transportation service in one locality, that would automatically establish the maximum reasonable rate that could be charged on other routes. Differentials in rates would thereby become unlawful. We know of no statute or principle of rate regulation requiring such a result.

Secondly, an abnormally low rate must by its definition be below a maximum reasonable rate. Therefore, if tomorrow the L & N should raise its Louisville rate to a reasonable level, which a fortiori it may have a right to do, then a similar increase in the Kenlite rate would be justified. See Interstate Commerce Commission v. Mechling, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102. Thus it would follow that in tying the Kenlite rate to the Louisville rate (assuming the latter to be abnormally low), the Commission would not be deciding what actually is the maximum reasonable rate between West Kentucky and Kenlite. Otherwise, the order in this case has the effect of fixing the depressed Louisville rate as the maximum reasonable rate (at $1.50 per ton) for the Louisville transportation service.

It is the contention of appellees that the Commission had the right to adopt the $1.50 Louisville rate as the basis for its determination of the reasonableness of the charge to Kenlite in view of our holding in Louisville & Nashville R. Co. v. Commonwealth, Ky., 300 S.W.2d 777. In that case we decided that "competitive rates" could be considered in determining what was a just and reasonable rate. We further said, at page 781: "Competitive rates when compensa-

tory, therefore, may be just and reasonable rates". This language is not in conflict with what we have stated above. What we have pointed out is that a certain type of competitive rate may be below a just and reasonable rate, and therefore may not constitute a proper standard of comparison.

The foregoing case is obviously not decisive of the question before us. Here our difficulty is raised by the following two questions: (1) Is the Louisville rate so abnormally low that it does not furnish a fair standard of reasonableness for comparison? (2) If the Louisville rate is a depressed rate, did the Commission accept this rate as a factor in fixing a just and reasonable rate? If the Louisville rate is a depressed one, and if the Commission accepted this rate as a factor in determining the reasonableness of the Kenlite rate, then the Commission's order is contrary to law.

■ Unfortunately the Commission's opinion made no finding concerning these vital questions. Throughout these proceedings L & N has contended that the Louisville rate was a depressed rate established to meet barge-truck competition in the transportation of fine coal, that is, it was a rate below what would be considered reasonable; and that it should not control the determination of what is the maximum reasonable rate from West Kentucky to Kenlite. If it is an unreasonably low rate, the use of it by the Commission as the controlling standard of comparison would have been erroneous. If it is not, then the Commission may properly have accepted it as a standard of comparison along with other significant factors. We think this was an essential basic fact which should have been determined by the Commission and set forth in its findings. See Valley & Siletz R. Co. v. Flagg, 195 Or. 683, 247 P.2d 639, 652; and Interstate Commerce Commission v. Mechling, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102.

■ It may be contended that even though the Commission applied an improper standard in choosing the Louisville rate as a comparative factor, the Commission's order should be sustained because of other standards which were properly invoked. In fixing the Kenlite rate the Commission noted that there were no switching charges from Louisville to Kenlite which could account for the increased rates. This certainly appears to be a proper factor to be considered by the Commission. The Commission also noted that plants located a greater distance from the Louisville yards than is appellees' plant enjoyed the Louisville rate. This also was a proper factor in fixing a just and reasonable rate. However these two findings of basic facts may be inadequate to support the order for we do not know whether or not the Commission would have arrived at the same conclusion if it could not consider the Louisville rate as a proper comparative standard. If the Louisville rate must be removed as a standard, and it is to be removed as a standard if it represents an abnormally low rate, the Commission might well find a higher rate to qualify as a just and reasonable rate.

We have heretofore pointed out an apparent misconception of the Commission with respect to the route involved and the reference in the opinion to the present rate as being discriminatory and prejudicial, which were not proper issues in the case. There is also an indication in the opinion that the Commission gave weight to an unsupported assumption. After noting that L & N had reduced its rate to Kenlite in 1953 to meet barge-truck competition, the Commission stated that:

"If that were true in 1953, it surely is true at the present time, and since the present rate is not low enough to meet the competition, it seems only fair and reasonable that the rate should be reduced to meet the competition, and should receive the Louisville rate, plus the differential of 15¢."

In the first place, we cannot see why, if before 1953 the rate did not meet competition, that the rate must not meet competition in 1958. The answer to that may be the Commission's comment that "the present

rate is not low enough to meet competition". But the Commission does not go on to say why the present rate does not meet competition, nor does it state what the competitive rate is.

The Commission's opinion also states:

"Irrespective of the possibility that complainant might use some other fuel or might use barge and truck from West Kentucky to Kenlite, it is the opinion of this Commission that the rate from West Kentucky to Kenlite is discriminatory, prejudicial, unjust, unreasonable and excessive."

■ The commission appears to be saying that regardless of the competitive factor, the rate to Kenlite is still unjust and unreasonable. But the Commission fails to state any basic facts in support of its conclusion that the rate would still be unjust and unreasonable.

As hereinbefore stated, an administrative body should set forth its findings of basic and ultimate fact, for if we cannot clearly understand the grounds upon which its decision is based, we will be unable to say whether the agency acted properly or improperly. From the Commission's opinion we cannot say with any degree of certainty whether or not the Commission's decision was right or wrong.

In view of what we have said, it is our conclusion that the order of the Commission is not based upon adequate findings of sufficient basic facts. The issue of whether or not the Louisville rate constitutes such an abnormally low rate as to not constitute a fair standard of comparison should be determined. The findings should also show what other basic facts and standards have been taken into consideration as a basis for the Commission's ultimate conclusion. We believe this controversy should be reconsidered by the Commission on the basis of the existing record or any additional evidence the Commission may deem necessary.

■ Appellant contends that the Commission is without power to award reparations from the date of the filing of the complaint. Such is not the law. Louisville & N. R. Co. v. Finn, 235 U.S. 601, 35 S.Ct. 146, 59 L.Ed. 379; Louisville & N. R. v. Greenbrier Dist. Co., 170 Ky. 775, 187 S.W. 296; Southern Ry. Co. in Kentucky v. Frankfort Dist., 233 Ky. 771, 26 S.W.2d 1025.

The judgment of the lower court is reversed with directions to remand the case to the Commission for further proceedings consistent with this opinion.