Richard Joyce SMITH, William J. Kirk, Harry W. Dorigan, Trustees of the Property of the New York, New Haven and Hartford Railroad Company, Debtors, Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

Railway Labor Executives' Association, Defendant-Intervenor.

Civ. A. No. 9165.

United States District Court
D. Connecticut.

Nov. 14, 1962.

Eugene E. Hunt, New Haven, Conn. (James W. Grady, New Haven, Conn.), for plaintiffs.

Leonard S. Goodman, Atty., Interstate Commerce Commission, Washington, D. C. (Lee Loevinger, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Robert C. Zampano, U. S. Atty., Dist. of Conn., New Haven, Conn., Joel E. Hoffman, Atty., of Dept. of Justice, Washington, D. C., and Robert W. Ginnane,

Gen. Counsel, I.C.C., Washington, D. C.), for defendants.

William G. Mahoney, Washington, D. C. (Dennis N. Garvey, New Haven, Conn.), for defendant-intervenor.

Before SMITH, Circuit Judge, and ANDERSON and BLUMENFELD, District Judges.

ANDERSON, District Judge.

This action is brought to set aside those portions of an order of the Interstate Commerce Commission which, in connection with a certificate of public convenience and necessity, granting leave to the plaintiff Railroad to abandon 4.76 miles of track, imposed provisos, known as the Burlington conditions, for the protection of employees adversely affected by such abandonment.

On August 18, 1955 severe storms resulted in a large number of floods in the State of Connecticut which caused extensive damage to the property of the plaintiff Railroad. Its bridge over the Quinebaug River, between Pomfret and Putnam, was destroyed. As a result all railroad activity ceased on the 4.76 miles of line affected and was never thereafter resumed.

However, freight service both to Pomfret and Putnam was immediately restored; the service to Pomfret was by the direct line, as before, and Putnam was served by routing trains over alternate lines of the plaintiff Railroad and by-passing the inoperative 4.76 portion.

Shortly after August 18, 1955, the plaintiff Railroad applied to the Public Utilities Commissions of Connecticut and Massachusetts temporarily to discontinue passenger service from Hartford to Boston. Both of these applications were granted. In the case of Massachusetts the petition for temporary suspension and the order granting it were never challenged and the order became permanent. On January 25, 1956, the plaintiff Railroad petitioned the Connecticut Public Utilities Commission for authority permanently to discontinue passenger operations between Hartford and Massachusetts. After extended hearings, this petition was granted on July 11, 1958. On October 2, 1958, the plaintiff Railroad applied to the Interstate Commerce Commission for authority to abandon the 4.76 miles of line between Putnam and Pomfret; and on July 17, 1959 Division 4 of the Interstate Commerce Commission granted the application, but imposed the "Burlington conditions" for protection of employees adversely affected by the abandonment order. On March 17, 1961, the Interstate Commerce Commission which had on December 7, 1959 denied a petition for reconsideration of the issue of abandonment but which had reopened determination of the question of imposition of the Burlington conditions, reaffirmed the inclusion of those conditions. It is from this that the plaintiff Railroad has appealed. At the hearing on this issue before the Interstate Commerce Commission the Railway Labor Executives' Association, which had dropped its petition to intervene upon the Interstate Commerce Commission's qualification of its permission to abandon by imposing the Burlington conditions, presented evidence to the effect that within a week after the cessation of train service over the portion of the line in question, certain crossing-tenders' jobs were abolished and thereafter certain track gangs and others were either discharged or demoted. The Railroad offered no evidence but relied solely on cross-examination and upon its legal claim that no employees could have been adversely affected by the order of the abandonment because all the employees were laid off or demoted, not because of the Interstate Commerce Commission's order of abandonment, but because of the prior approval by the Public Utilities Commissions of the Railroad's applications to discontinue passenger service. The issue presented, then, is whether the Interstate Commerce Commission was arbitrary in finding that the public convenience and necessity called for the retroactive application of the Burlington conditions as of the date of the flood and the cessation of rail-

road activity over the 4.76 mile portion of the line to include any affected employee whether exclusively in passenger service, freight service or both, in spite of the fact that the Connecticut Public Utilities Commission had, after the cessation of service but before the Interstate Commerce Commission's abandonment order, granted the Railroad leave to discontinue passenger service.

The authority of the Interstate Commerce Commission over abandonments is provided for in 49 U.S.C. § 1(18, 20). The Burlington conditions for the protection of employees were first imposed in Chicago, B. Q. R. Co. Abandonment, 257 ICC 700 (1944); and the power of the Interstate Commerce Commission to impose such conditions, as a part of its statutory duty to consider "public convenience and necessity", has been recognized and approved by the Supreme Court. I.C.C. v. Railway Labor Executives Association, 315 U.S. 373, 62 S.Ct. 717, 86 L.Ed. 904 (1942); Railway Labor Executives' Association v. United States, 339 U.S. 142, 70 S.Ct. 530, 94 L.Ed. 721 (1950).

Where the Interstate Commerce Commission has granted a railroad leave to abandon and thereafter there is a cessation of railroad services over the abandoned portion of the line resulting in the lay-off or demotion of certain employees, the "cause and effect" application of the Burlington conditions to such employees proceeds in normal time sequence. Where, however, a cessation of railroad services is suddenly brought about by a force or forces beyond the control of the railroad and thereafter leave to abandon the damaged portion of the line is granted, the employees, in most of such instances, have actually been laid-off or demoted following the destruction of the portion of the line in question and before the order of abandonment. In cases of that kind the Interstate Commerce Commission has, for the purpose of employee protection, proceeded as if the duties of which the railroad has been relieved by the abandonment order had been lifted from the railroad at the time of the actual cessation of railroad activity, and as if the employees affected had been laid-off or demoted in direct consequence of the relinquishment of the railroad's duty to operate railroad services on the lines damaged. Buffalo & Susquehanna R. Corp. Abandonment, 254 ICC 303; St. Louis-San Francisco Ry. Co. Trustees Abandonment, 261 ICC 781; Sacramento Northern Ry. Trustees Abandonment, 295 ICC 73.

The retroactive imposition of the Burlington conditions, under such circumstances, is a reasonable extension or application of the rule governing employee protection in abandonment cases.

It may be noted that, where the matter at issue is something other than employee protection, the discontinuance of railroad services because of forces beyond the railroad's control is not held to be an "abandonment". Myers v. Arkansas & Ozarks Ry. Corp., 185 F.Supp. 36 (W.D.Ark.1960); Zirn v. Hanover Bank et al., 215 F.2d 63, 69 (2d Cir., 1954); Chamber of Commerce of Demopolis et al. v. Southern Ry. Co., 206 ICC 70 (1934).

Under the Burlington conditions protection is to be afforded "employees adversely affected by abandonment". Railway Labor Executives' Association v. United States, 339 U.S. 142, 70 S.Ct. 530, 94 L.Ed. 721 (1950). There must, therefore, be a causal relationship between the abandonment and the adverse effect upon an employee. The employee's dismissal or demotion must have been brought about by the abandonment; if it was brought about by some other cause or for some other reason, he is not entitled to protection.

In the present case to justify the imposition of the Burlington conditions, the Interstate Commerce Commission had to find that some employee or employees were adversely affected by the abandonment of the 4.76 miles of track. The Commission so found. The plaintiff Railroad challenges this finding on the ground that there is no evidence in the record to support it. The transcript,

however, makes clear that there was sufficient evidence for the Commission to find that some employees were adversely affected.

The Railroad asserts that the discontinuance of passenger service resulted, not from the abandonment, but from the action of the Public Utilities Commissions of Connecticut and Massachusetts granting the Railroad the right to discontinue passenger service considerably over a year before the authority to abandon was granted by the Interstate Commerce Commission.

It is not questioned that where no contrary order of the Interstate Commerce Commission has been entered as provided in 49 U.S.C. § 1(17), the Public Utilities Commission of the State has full authority over "curtailments of service and partial discontinuances". Palmer v. Massachusetts, 308 U.S. 79, 85, 60 S.Ct. 34, 37, 84 L.Ed. 93 (1939); Kansas City So. Ry. Co., Application, 94 ICC 691 (1925). The termination of the duty to operate passenger service over the whole line between Hartford and Boston came about because the Public Utilities Commissions of the States of Connecticut and Massachusetts authorized it. This was entirely within their exclusive power. Prior to that time the Railroad had the duty to maintain passenger service and it was not until its petitions were granted by the Public Utilities Commissions of Connecticut and Massachusetts that it was relieved of that duty.

■ A question, therefore, arises concerning the right to include, within the benefits of the Burlington conditions, any employees, engaged exclusively in the passenger service, on the ground that they were adversely affected by the abandonment of the 4.76 miles of line.

It is the court's opinion that the Interstate Commerce Commission was justified, under the circumstances of this case, in so including them. Everything which happened from the destruction of the bridge to and including the issuance of the certificate of convenience and necessity on July 17, 1959 constituted, for the 4.76 miles in question, a single series of events leading to the authorized abandonment of this portion of the line; and, for the purpose of the application of the Burlington conditions, no reasonable distinction can be made between passenger employees and freight employees on the basis of the means through which the Railroad was granted the right to abandon the respective services.

The cessation of passenger and freight services on the 4.76 miles of line occurred simultaneously; either service has at any time been resumed. No plans, preparations or efforts were ever made to resume them. The Railroad could have sought relief on this 4.76 miles in question by applying for the abandonment to the Interstate Commerce Commission shortly after the cessation of services in 1955. It postponed such an application only because it decided it was advisable first to eliminate passenger service[1] between Hartford and Boston; and this course was followed. The ultimate elimination of all duty on the part of the Railroad to provide freight and passenger services over the 4.76 miles took place, at the Railroad's election, in stages rather than in a single application to the Interstate Commerce Commission. The issue of a passenger service employee's right to the benefits of the Burlington conditions should not be determined by the Railroad's decision on what course to follow to achieve the right to abandon a portion of line on which passenger and

[1]. In answer to the Interstate Commerce Commission's Questionnaire the petitioner on October 28, 1958 filed its return and in response to Question 18 the petitioner said in part: " * * * The application herein to the Interstate Commerce Commission for a certificate of public convenience and necessity authorizing complete abandonment of the line has been postponed until recently because applicant desired in accordance with customary practice to eliminate passenger service from the line before asking this Commission's permission completely to abandon it * * *."

freight operation had already and simultaneously ceased.

This is not to suggest that the Railroad had an ulterior motive in applying first to the Public Utilities Commissions. On the contrary, the Railroad in its rapidly deteriorating financial condition was undoubtedly faced at that time with the pressing necessity of seeking relief from the duty of maintaining the losing passenger service between Hartford and Boston. The 4.76 miles in question were but a very small fraction of the whole line; and the discontinuance of passenger service over them was dictated by the solution of the larger passenger service problem. The point is that it doesn't matter, in this case, what the Railroad's motive was in first applying to the Public Utilities Commissions.

■ It is a part of the Burlington conditions that the actual number of employees adversely affected by an abandonment and the losses incurred by each are to be determined by arbitration.

In this case arbiters may, under the terms of the Interstate Commerce Commission's opinion, grant awards to employees adversely affected by the abandonment of the 4.76 miles of line. While the employee, to receive an award, need not have had a work station precisely within the 4.76 mile portion of the line, the adverse effect which he suffered must have been the direct consequence of the abandonment of the 4.76 mile section and not because of something else. If he was not himself thus directly affected, he must have been "bumped" into discharge or demotion by someone or through a chain of employees from someone who was.

This consideration calls for a thorough exploration of available evidence and careful findings by the arbiters, because, as a result of the authority granted the Railroad by the Public Utilities Commissions to discontinue passenger service between Hartford and Boston, there probably were, in addition to employees laid-off or demoted because of the abandonment of the 4.76 miles of line, other lay-offs and demotions because of the discontinuance of passenger service between Hartford and Pomfret and between Putnam and Boston. These two large portions of the railroad line, together constituting about 112 miles, were not abandoned but were subject only to a discontinuance of passenger service. Freight service continued to operate over them all during the period when the present case was before the Interstate Commerce Commission. The Interstate Commerce Commission did not include and, indeed, had no power to include, within the application of the Burlington conditions, employees laid-off or demoted because of the discontinuance of passenger service on this 112 miles of line; claims of passenger service employees not directly related to the 4.76 miles abandoned are not, on this record, before the arbiters.

It seems highly improbable in view of this that the awards of the arbiters will be of a total amount sufficient seriously to affect the financial stability of the Railroad. Neither the Interstate Commerce Commission nor the Court, on the evidence presented can reach any accurate determination of this issue or whether the damage to the Railroad's prospects of continuing other service calls for an exception [2] to the Burlington conditions.

The lack of findings on this is not surprising, in view of the Railroad's claim that there were no employees affected and its failure to offer evidence on the issue. If it should turn out that there are many such employees, the Commission may well entertain an application by the Railroad for leave to show a change of circumstances on the issue of financial stability.

The order of the Commission is affirmed without prejudice to application

2. See Chicago A. & S. R. Co. Receiver Abandonment, 261 ICC 646, 651 (1946).

Md. & P. R. Co. Abandonment, 295 ICC 719 (1958).

**72**

to the Interstate Commerce Commission for modification following the awards by the arbiters, and the petition is dismissed.