**RAILWAY LABOR EXECUTIVES' ASSOCIATION; International Association of Machinists and Aerospace Workers, District Lodge No. 19; and United Transportation Union, General Committee of Adjustment GO–887, Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION; and United States of America, Respondents.**

No. 89–70134.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 18, 1990.

Decided Feb. 1, 1991.

Petition for Rehearing Granted March 4, 1992.

Order and Amended Opinion March 4, 1992.

Donald F. Griffin, Highsaw & Mahoney, Washington, D.C., for petitioners.

Lawrence H. Schecker, I.C.C., Washington, D.C., for respondents.

Guy Vitello, Chicago, Ill., and E. Barnett Prettyman, Jr., Hogan & Hartson, Washington, D.C., for respondents-intervenors.

\* The Honorable James M. Fitzgerald, United States District Judge for the District of Alaska, sitting by designation.

1. "Petitioners" will be used to describe the collective position of RLEA, IAM and UTU.

2. 49 U.S.C. § 11347 (1988) provides:
When a rail carrier is involved in a transaction for which approval is sought under sections 11344 and 11345 or section 11346 of this title, the Interstate Commerce Commission shall require the carrier to provide a fair arrangement at least as protective of the interest of employees who are affected by the transaction as the terms imposed under this section before February 5, 1976, and the terms established under section 405 of the Rail Passenger Service Act (45 U.S.C. 565)....
The arrangement and the order approving the transaction must require that the employees of the affected rail carrier will not be in a worse position related to their employment as ·a result of the transaction during the 4 years following the effective date of the final action of the Commission....

Before FLETCHER and BEEZER, Circuit Judges, and FITZGERALD, District Judge.\*

## ORDER

The panel has unanimously voted to grant the petition for rehearing. Judges Fletcher and Beezer have rejected the suggestion for rehearing en banc and Judge Fitzgerald recommended rejection.

The full court has been advised of the suggestion for rehearing en banc and no judge in active service has requested a vote to rehear the matter en banc.

An amended opinion is filed herewith and the clerk shall issue the mandate forwith.

BEEZER, Circuit Judge:

The Railway Labor Executives' Association ("RLEA"), the International Association of Machinists and Aerospace Workers ("IAM") and the United Transportation Union ("UTU")[1] petition for review of a decision of the Interstate Commerce Commission ("ICC" or "Commission") declining to impose protective conditions for railway employees under 49 U.S.C. § 11347.[2] We

The protective conditions imposed under this section were set out in *New York Dock Railway—Control—Brooklyn Eastern District Terminal*, 360 I.C.C. 60 (1979), aff'd sub nom., *New York Dock Railway v. United States*, 609 F.2d 83 (2d Cir.1979). Employers must provide employees with ninety days written notice of a transaction under 49 U.S.C. § 11343. For a period up to *six years* after a merger, consolidation or other section 11343 transaction, employers must provide employees with the same pay, working conditions, pension rights, and other rights provided for in collective bargaining agreements. For example, if employers transfer employees to lower paying positions, they must pay employees their previous wage. If employers dismiss employees, they must continue to pay their wages adjusted for unemployment benefits and earnings from subsequent jobs. If employees choose to resign, they are entitled to a lump sum payment.

Employers must give dismissed and displaced employees priority when filling new positions. Employers must also pay to retrain employees for openings which employees are mentally and

affirm in part and remand to the ICC for further proceedings.

## I

Various facets of this case have been pending before the ICC. Santa Fe Industries ("SFI"), a holding company for the Atchison, Topeka & Santa Fe Railway Company ("ATSF"), agreed in 1983 to consolidate with the Southern Pacific Company ("SPC"), a holding company for the Southern Pacific Transportation Company ("SPT"). SFI and SPC merged to form the Santa Fe Southern Pacific Corporation ("SFSP"). Before SFSP could exercise control over both railroads, it needed ICC approval under 49 U.S.C. § 11343. Pending ICC approval of the merger, SFSP placed SPC's stock in SPT in an independent voting trust.

In December of 1983, the ICC issued an order prohibiting the merger pending the Commission's review of the voting trust. 2 I.C.C.2d 712, 715 (1986). After examining the trust, the ICC concluded in an unpublished decision that the trust was compatible with ICC regulations.

In October of 1986, the ICC denied SFSP's applications to control SPT and to merge SPT with ATSF. *Santa Fe Southern Pacific Corp.—Control*, 2 I.C.C.2d 709 (1986). The Commission concluded that granting SFSP's applications would have anti-competitive effects. It ordered SFSP to divest itself of either ATSF or SPT, subject to Commission oversight. *Id.* at 834–36.

SFSP decided to sell SPT to Rio Grande Industries ("RGI"), a holding company for the Denver & Rio Grande Western Railroad Co. ("DRGW"). The ICC approved SFSP's divestiture of SPT and RGI's application to control SPT in *Rio Grande Industries—Control—SPT Co.*, 4 I.C.C.2d 834 (1988).

In *Rio Grande Industries*, RLEA petitioned the ICC to impose employee protective conditions under 49 U.S.C. § 11347 for the benefit of employees who were adversely affected by actions taken in anticipation of the disapproved SPT–ATSF merger. The ICC declined to impose protective conditions for actions taken by ATSF or SPT. *Id.* at 955. The Commission first explained that ATSF was not an applicant to the *Rio Grande Industries* proceeding. The Commission then noted that labor protection is provided under 49 U.S.C. § 11347 only in proceedings in which it *approves* a merger transaction. It concluded that it lacked authority in the RGI acquisition proceeding to mandate protective conditions for the aborted ATSF–SPT merger for actions taken by ATSF or SPT. *Id.*

However, the Commission agreed to examine in a subsequent proceeding whether employees affected by actions of SFSP in connection with the ATSF–SPT merger should be afforded labor protection. *Id.* at 955–56. Unlike ATSF and SPT, ICC subjected SFSP to continuing jurisdiction because of SFSP's "control" of SPT through the voting trust. Because it believed that the issue needed further analysis, the ICC invited comments on the extent of its authority to impose protective conditions on employees affected by actions taken by SFSP.

The Commission received comments from RLEA, SPT and SFSP. In the decision under review in this case, the Commission declined to impose labor protective conditions. The ICC concluded that it lacked authority to impose protective conditions under 49 U.S.C. § 11347 because it had not *approved* the ATSF–SPT merger. It explained that employees affected by actions taken by ATSF or SPT could resort to grievance procedures in collective bargaining agreements. Employees who were affected by actions taken by SFSP, the Commission contended, could institute civil actions under 49 U.S.C. § 11705.

In a related case, this court addressed the claims of SPT employees against ATSF

---

physically capable of filling, even if the positions are in fields wholly unrelated to an employee's previous position. Employees, however, must accept positions similar to their previous positions which become available after a

section 11343 transaction in order to retain benefits. If the new position is in a distant location, employers must pay for moving expenses, and they must reimburse employees who incur losses when selling their homes.

and SFSP arising under the Interstate Commerce Act ("ICA") and Oregon's law of tortious interference with an economic relationship. *Kraus v. Santa Fe Southern Pacific Corp.*, 878 F.2d 1193 (9th Cir.1989), *cert. dismissed*, 493 U.S. 1051, 110 S.Ct. 1329, 107 L.Ed.2d 850 (1990). In *Kraus*, we refused to examine the merits of plaintiffs' claim that ATSF unlawfully exercised control over SPT in violation of the ICA. Noting that ICC authority over mergers is exclusive, we held that the district court lacked jurisdiction over plaintiffs' ICA claim. *Id.* at 1198. We explicitly rejected the reasoning of the ICC decision under review in this case and held that employees affected by decisions of SFSP in connection with the failed ATSF–SPT merger could not file suit in district court under 49 U.S.C. § 11705 alleging unlawful control under 49 U.S.C. § 11343. *Id.* at 1198 n. 2.

RLEA, IAM and UTU petition for review of the ICC's decision refusing to impose protective conditions for employees affected by the disapproved ATSF–SPT merger. The ICC and intervenors SFSP and ATSF argue (1) that IAM and UTU lack standing and that we should transfer this case because venue for RLEA's petition is not proper in this court, and (2) that the ICA does not authorize protective conditions for the railway employees involved in this case.

## II

ICC, SFSP and ATSF contend that IAM and UTU lack standing to petition for review of the ICC's decision. Only "part[ies] aggrieved" by an ICC order may petition for review under 28 U.S.C. § 2344.[3] To have standing, petitioners must have been parties to the proceeding under review. *Sierra Club v. United States Nuclear Regulatory Commission*, 825 F.2d 1356, 1360–61 (9th Cir.1987). *Accord Water Transport Association v. I.C.C.*, 819 F.2d 1189, 1192–93 (D.C.Cir.1987); *Packard Elevator v. I.C.C.*, 808 F.2d 654, 655 (8th Cir.1986), *cert. denied sub nom., In-*

*ternational Brotherhood of Electrical Workers v. I.C.C.*, 484 U.S. 828, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987). Because neither IAM nor UTU filed comments with the ICC concerning the Commission's authority to impose labor protective conditions in this case, the ICC and the intervenors contend that IAM and UTU lack standing.

Petitioners IAM and UTU claim that they were parties to the agency proceeding under review. The ICC docketed proceedings relating to SFSP's application to control SPT and to merge ATSF with SPT under Finance Docket Number 30400. The ICC's unpublished decision approving the voting trust was denominated Decision No. 2 under main docket number 30400. The ICC decision under review here was docketed under 30400 as Sub–No. 21.

UTU argues that its General Chairman was a party of record to main docket number 30400 and hence a party to all proceedings under that docket number. IAM's General Chairman claims he is similarly listed as a party of record in Subs 8 through 20.

Petitioners add that the ICC only solicited comments on its authority to impose protective conditions. It did not ask parties to restate their intention to participate in the proceedings. Because the ICC had requested parties to restate their intention to participate in proceedings in at least one unpublished decision, petitioners ask us to infer that the ICC presumed that the parties in this case would continue to participate in all sub-numbered proceedings. *See Blackstone Capital Partners L.P.—Control—CNW Corporation and Chicago and North Western Transportation Co.*, Finance Docket No. 31493 (Sub–No. 1) (unpublished) (July 5, 1989).

We asked the parties to provide supplemental briefing on the standing issue. UTU maintained that it is only fair to assume that parties to lead docket numbers remain parties to all sub-numbered pro-

---

**3.** 28 U.S.C. § 2344 (1988) provides in part: "On the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any *party aggrieved* by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies...." (Emphasis added.)

ceedings. The ICC conceded that it sometimes consolidates main docket proceedings with sub-numbered proceedings, treating the consolidated proceeding as one proceeding. The ICC also admitted that its procedures with regard to main docket numbers and sub-numbered proceedings are not codified in agency regulations and are only "accepted internal practices that have been in place for many years." However, the ICC argued that it published notice in the Federal Register asking for comments, and UTU and IAM could have participated if they wanted to comment. The ICC suggested that the UTU should have been aware that the ICC for several years has treated sub-numbered proceedings as completely different proceedings from main docket proceedings.

The only Ninth Circuit case addressing the "party" requirement of 28 U.S.C. § 2344 is *Sierra Club*, 825 F.2d at 1360–61. In that case, we held that the petitioner lacked standing because it was not a party to the agency proceeding under review and because it did not participate at all in the agency's decision. This case is different because UTU was a party to the main docket number under review and because IAM participated as a party to several sub docket numbers.

We conclude that the UTU was a party aggrieved by the Interstate Commerce Commission's order in *Santa Fe Southern Pacific Corp.—Control—Southern Pacific Transportation Co.*, Finance Docket No. 30400 (Sub–No. 21) (January 25, 1989) by virtue of being a party to the main docket number. The ICC's internal practices of differentiating sub-numbered proceedings from main docket proceedings were so cryptic as to make it unfair to penalize a party not aware of the rules. Accordingly, the UTU, as a party to the main docket proceeding, will be considered a party to the sub-numbered proceeding at issue here.

IAM, however, may not be considered a party to the relevant sub-numbered proceeding on this basis. That association was a party only to a different individual sub-numbered proceeding, rather than to the main docket proceeding. Accordingly, IAM could not properly have believed itself to be a party to the sub-numbered proceeding at issue here.

Because we decide that UTU has standing, we need not decide whether venue is proper in this circuit for RLEA. *See Exxon Corp. v. F.T.C.*, 588 F.2d 895, 898–99 (3d Cir.1978) (in order to avoid a multiplicity of similar suits in different courts, venue need be proper for only one plaintiff under 28 U.S.C. § 1391(e)(4)). Respondents and intervenors do not challenge venue for UTU.

### III

RLEA argues that the ICC was required to impose employee protective conditions in this case pursuant to 49 U.S.C. § 11347. Alternatively, RLEA contends that the ICC's decision not to exercise its discretion to impose labor protection was arbitrary and capricious.

### A. The Statute

■ Section 11347 of the ICA requires the ICC to impose labor protection in favor of employees who are affected by transactions "for which *approval is sought* under sections 11344 and 11345 or section 11346." 49 U.S.C. § 11347 (emphasis added). The ICC's "order *approving the transaction* must require that the employees of the affected rail carrier will not be in a worse position related to their employment." *Id.* (emphasis added). The ICC decided that it had no authority to impose protection for employees affected by the failed ATSF–SPT consolidation because the Commission did not approve the transaction.

The Supreme Court has explained that where Congressional intent is ambiguous, courts should defer to a reasonable agency interpretation of a statutory scheme the agency is entrusted to administer. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–845, 104 S.Ct. 2778, 2781–2783, 81 L.Ed.2d 694 (1984). This Circuit upholds an agency's decision "unless it is 'arbitrary, capricious or manifestly contrary to the statute.'" *RLEA v. I.C.C.*, 784 F.2d 959, 964 (9th Cir.1986) (quoting *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782).

RLEA suggests that the ICC had authority to impose labor protection for the benefit of employees affected by the failed merger because the Commission approved both SFSP's voting trust and SFSP's divestiture of SPT. Section 11347 authorizes labor protection for employees affected by transactions for which approval is sought under section 11344. Section 11344 sets forth approval procedures for transactions enumerated in section 11343.

A section 11343 merger may be comprised of a series of integrally related transactions. *Deutsch v. Flannery*, 883 F.2d 60, 63 (9th Cir.1989). SFSP sought ICC approval for its plan of merger, of which the voting trust was an integral part. The ICC imposed conditions that disapproved the merger, but still governed the transaction. The divestiture is not a transaction enumerated in section 11343(a), so it is not a transaction for which SFSP is required to *initiate* proceedings seeking approval under section 11344. *See* 49 U.S.C.A. § 11344(a). Clearly, the ICC did not approve "a transaction for which approval is *sought* under section[ ] 11344." 49 U.S.C.A. § 11347 (emphasis added). SFSP is involved in a divestiture, not a section 11343 merger or consolidation. Accordingly, section 11347 does not apply. The imposition of protective conditions on the basis of the voting trust or divestiture is not required under the ICC's construction of section 11347. This construction is neither arbitrary nor capricious.

## B. The ICC's Discretionary Power

 Even if labor protective conditions are not statutorily required in this case, petitioners maintain that the ICC had discretionary authority to impose labor protective conditions. *See I.C.C. v. RLEA*, 315 U.S. 373, 62 S.Ct. 717, 86 L.Ed. 904 (1942). Respondents argue that petitioners raised the question whether the ICC has discretionary authority for the first time on appeal. Petitioners maintain that they cited the relevant authority in RLEA's comments to the ICC.

RLEA discussed *United States v. Lowden*, 308 U.S. 225, 60 S.Ct. 248, 84 L.Ed.

208 (1939), and cited *ICC v. RLEA*, 315 U.S. 373 (1942), in its Comments to the Commission and in its Reply to Comments submitted by SFSP and ATSF. RLEA did not expressly argue that the ICC has *discretionary* authority to impose labor protections for the benefit of employees. However, RLEA did argue that *Lowden* and *RLEA* indicate that the Commission has *authority* to impose protective conditions. RLEA then contended not only that the Commission had authority to impose protective conditions, but also that the Interstate Commerce Act mandated protective conditions. Because *Lowden* and *RLEA* both discuss the Commission's discretionary authority to impose labor protection, RLEA argued that the ICC has discretionary authority in the proceedings before the Commission.

Section 11344 establishes the procedure for ICC approval and authorization of a section 11343 transaction. SFSP applied to the ICC for approval of its proposed merger of SFI and SPC and their related controlled railroads. *See* 49 U.S.C.A. § 11343(a)(4). The ICC has discretion to impose conditions on the transaction, but to approve and authorize the transaction the ICC must find it "consistent with the public interest." 49 U.S.C.A. § 11344(c). The ICC did not find the transaction, as originally proposed, to be consistent with the public interest. The ICC considered the merger's anti-competitive effects and required SFSP to divest itself of either ATSF or SPT. When SFSP elected to sell SPT, the ICC decided that it was in the public interest to approve both SFSP's divestiture and RGI's application to control SPT.

Did the ICC lose all remedial authority once it disapproved the merger? We think not. When a carrier seeks approval of a section 11343 transaction under section 11344, the statute says that "[t]he Commission may impose conditions governing the transaction." 49 U.S.C.A. § 11344(c). Whether the ICC approves the transaction depends on its determination of the public interest. In this case, the ICC conditioned its approval on SFSP's divestiture of either ATSF or SPT because of concerns about

the proposed merger's anti-competitive effects.

If the ICC can condition its approval of a transaction on satisfying the concern for anti-competitive effects articulated by Congress in section 11344(b)(1)(E), certainly it can address Congress' labor concern as well. *See* 49 U.S.C.A. § 11344(b)(1)(D). "[We do not] impute to Congress a policy of mandatory protection for labor in unifications and no protection at all in abandonments. It is reasonable to suppose that if Congress had intended to make such a distinction, it would have said so more explicitly." *ICC v. RLEA*, 315 U.S. at 379–80, 62 S.Ct. at 721. We hold that, when the ICC imposes conditions on a transaction under section 11344(c), it must consider, in its own discretion, whether protective conditions for affected employees are warranted. Since the ICC did not exercise its discretion in determining whether such labor protection was warranted, we remand to the ICC for proper consideration of this issue.

## IV

We hold that UTU has standing, but that IAM lacks standing. We conclude that 49 U.S.C. § 11347 does not require the ICC to impose labor protection for employees in this case. Since 49 U.S.C. § 11344(c) gives the Commission discretionary power to impose protective conditions, however, we remand for determination of whether such protection was warranted.

AFFIRMED.