BOARD OF TRUSTEES OF the POLICE-
MEN'S & FIREFIGHTERS RETIRE-
MENT FUND OF the LEXINGTON–
FAYETTE URBAN COUNTY
GOVERNMENT, Appellant,

v.

Gary F. BROWN, Appellee.

Court of Appeals of Kentucky.

Dec. 23, 1983.

Discretionary Review Denied by
Supreme Court April 11, 1984.

Theresa L. Holmes, Barbara B. Edelman,
Dept. of Law, Lexington-Fayette Urban
County Government, Lexington, for appel-
lant.

Charles Taylor, Taylor, Elam & McCon-
nell, Lexington, for appellee.

Before HAYES, C.J., and HOWARD and
REYNOLDS, JJ.

HAYES, Chief Judge:

Gary F. Brown, appellee herein, is a
retired police officer who alleges to be to-
tally and permanently disabled from per-
forming his duties as a police officer due to
problems he has experienced with his back.
His application for occupational disability
benefits, under K.R.S. 67A.460, was denied
by the appellants, Board of Trustees of the
Policemen's and Firefighters' Retirement
Fund of the Lexington-Fayette Urban
County Government (Board of Trustees) on
the ground that his "medical problem was
not service connected." On appeal, the Fa-
yette Circuit Court reversed the Board's
decision and held as a matter of law that
the appellee had sustained an occupational
disability and ordered that the matter be
remanded to the Board for a finding of
whether the appellee is totally and perma-

nently disabled. The Board of Trustees has appealed to this Court.

The issue raised in this matter is whether the provisions of K.R.S. 67A.360(11) allow an applicant for occupational disability benefits to be compensated for a pre-existing, dormant non-disabled condition aroused, and/or aggravated, into disabling reality by the applicant's work-related duties. We agree with the trial court that such an aroused condition is due to "occupational cause" as contemplated by K.R.S. 67A.360(11).

The evidence of record shows that Brown was employed as a police officer by the Urban County Government in January, 1973. He spent the next eight years in the patrol section driving a police cruiser for approximately six and one-half to eight hours a day. In February, 1980, he suffered a back strain while washing his police cruiser while off duty which caused him to miss four days of work. He recovered from this without further incident. In November, 1980, he began experiencing discomfort in his back which progressed to such a degree by December that he could not get out of a chair. At that point Brown consulted with Dr. Ralph Angelucci, a neurosurgeon, who hospitalized him for about one week. In January, 1981, Brown returned to light duty work. When he attempted to return to his duties as a patrolman the following May his back problems returned. He has not worked since July, 1981.

The evidence that appellee's cervical disc disease has been aggravated or aroused into disabling reality is uncontradicted in the record. The evidence also reveals that the disabling condition was aroused by three factors: the lengthy hours spent driving the patrol car, appellee's excess weight, and general wear and tear.

Dr. Angelucci, the appellee's treating physician, testified as follows:

I feel Mr. Brown is unable to perform the duties of a patrol officer or any position which requires extended sitting. Mr. Brown's disability to be a police officer is due to his chronic back condition,

being overweight and emotional instability.

It is my opinion that his chronic back condition was aroused by his riding in his patrol car for six (6) to eight (8) hours per day over an eight (8) year period. That further, Mr. Brown has a degenerative disc condition which was dormant until aggravated by his patrol duties. His emotional instability is related to his back condition.

■ Dr. Sheridan also testified that the appellee's dormant condition was aroused into disabling reality by the "prolonged riding in the police car for extended periods of time over a period of years." Dr. Thompson did not refer to the appellee's work activities but testified that "it is felt that his obesity has been an aggravating factor" in the changes manifested in the appellee's back. Dr. Robertson did not address the causes of the appellee's disabling condition. The testimony of Dr. Thompson does not conflict with that of Dr. Angelucci and Dr. Sheridan on the issue of the causation of appellee's condition but merely supplements their testimony. Dr. Thompson did not state or even imply that the appellee's build was the only aggravating factor but merely "an" aggravating factor in the acceleration of the disease. Thus it was arbitrary and not in conformity with the provisions of the pension statute for the Board of Trustees to ignore the uncontradicted medical evidence of the cause of the appellee's condition and to thereby deny his claim for pension benefits. If it is proven, as was the case here, that the nature and duration of the work effort aggravated or aroused a dormant, degenerative condition to a disabling condition sooner that it would have been aroused without the work effort, the condition itself is an injury. *Haycraft v. Corhart Refractories Co.,* Ky., 544 S.W.2d 222, 225 (1977).

■ The appellant further argues, however, that even if the appellee's condition was aroused by his work, that it is nonetheless noncompensable under the statutory definition of "occupational disability" and that the trial court erred in declining to

defer to the Board of Trustees' interpretation thereof. Statutory interpretation is, of course, a matter of law and a court of review is not bound by the interpretation of a statute adopted by an administrative body. *Louisville & Nashville R. Co. v. Commonwealth*, Ky., 314 S.W.2d 940, 943 (1958).

Our responsibility is to attempt to ascertain the intent of our legislature. In so doing we are guided by K.R.S. 446.080 which provides in part as follows:

(1) All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature, and the rule that statutes in derogation of the common law are to be strictly construed shall not apply to the statutes of this state.

. . . . .

(4) All words and phrases shall be construed according to the common and approved usage of language, but technical words and phrases, and such other as may have acquired a peculiar and appropriate meaning in the law, shall be construed according to such meaning.

The object of the legislation pertaining to the pension funds for police and firefighters, as set out in K.R.S. 67A.360–67A.690 is "to encourage qualified personnel to enter and remain in the service of such department." K.R.S. 67A.380. *See also, Cook v. Chilton*, Ky. 390 S.W.2d 656 (1965). The statute provides a comprehensive scheme for compensating one for injuries occurring both on the job and off. Those, however, who have incurred "occupational disabilities" are compensated at a greater rate than those who become disabled from non-occupational causes. K.R.S. 67A.460; 67A.470.

■ The definition of "occupational disability" is found at K.R.S. 67A.360(11) and provides as follows:

"Occupational disability" shall mean *disability* due to occupational causes, including *but not limited to* injury or disease. The presumption of contracting disease "while on active duty as a result

of strain or the inhalation of noxious fumes, poisons or gases" created by KRS 79.080 shall be a presumption of "occupational disability" hereunder. [Emphasis ours.]

The appellees interpret this definition to mean that the appellee's dormant, nondisabling disc disease would have to have been caused by the job for the appellee to be entitled to compensation under K.R.S. 67A.460. They contend that the mere arousal of a dormant condition by one's ordinary job responsibilities does not fall within the definition of "occupational disability." However, we cannot glean such an intent to so narrowly restrict those eligible for occupational benefits when the statute plainly requires only that the *disability* be job related, not that the underlying dormant disease be job related as well.

Our law makers have long been familiar with the concept of occupational disabilities as embodying those aroused by work-related activities and we find nothing in the statute at issue evidencing an intent to preclude those with aroused injuries from benefiting thereunder. Instead, we think it clear that the legislature intended that one who becomes disabled because of his work is entitled to an occupational disability pension. It was established by the appellee that his disabling condition was aggravated and aroused by the repeated trauma occurring during the course of his employment. The trial court correctly found this to be an "occupational disability" for the purposes of determining the amount of pension benefits the appellee is entitled to receive.

The judgment of the Fayette Court is hereby affirmed.

All concur.