922 F.2d 112
 Jonathan MARSH, Plaintiff-Appellant,
v.
Samuel K. SKINNER, individually and in his capacity as
Secretary of the United States Department of Transportation;
Brian C. Clymer, individually and in his capacity as
Administrator of the Urban Mass Transportation
Administration; Leonard Braun, individually and in his
capacity as Eastern Regional Director of the Urban Mass
Transportation Administration; Brian Sternan, individually
and in his capacity as Manager of Region II of the Urban
Mass Transportation Administration; Metropolitan
Transportation Authority; New York City Transit Authority;
Robert F. Kiley, individually and in his capacity as
Chairman and Mortimer L. Downey, individually and in his
capacity as Executive Director, of the Metropolitan
Transportation Authority, the New York City Transit
Authority, the Manhattan and Bronx Surface Transit Operating
Authority, the Staten Island Surface Transit Operating
Authority, the Long Island Railroad, the Metro-North
Commuter Railroad and the Metropolitan Suburban Bus Company;
Edward I. Koch, individually and in his capacity as Mayor
of the City of New York; New York City Department of
Transportation; Ross Sandler, individually and in his
capacity as Commissioner of the New York City Department of
Transportation; Sandra Schnur, individually and in her
capacity as Director of the Half Fare Program for the
Handicapped of the City of New York City Department of
Transportation; and 100 Does, Defendants-Appellees.
 No. 98, Docket 90-6113.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 26, 1990.
Decided Dec. 26, 1990.
 
 Jonathan Marsh, New York City, pro se.
 Susan Weiner, New York City, for defendants-appellees Metropolitan Transp. Authority, New York City Transit Authority, Robert F. Kiley, and Mortimer L. Downey.
 Fred Kolikoff, New York City (Victor Kovner, Larry A. Sonnenshein, of counsel), for defendants-appellees Edward I. Koch, New York City Dept. of Transp., Ross Sandler, and Sandra Schnur.
 Paul Weinstein, Asst. U.S. Atty., New York City, for defendants-appellees Samuel B. Skinner, Brian C. Clymer, Leonard Braun, and Brian Sternan.
 Midge M. Hyman, New York City (Jerome G. Lee, Christopher K. Hu, Morgan & Finnegan, and Herbert Semmel, New York Lawyers for the Public Interest, Inc., of counsel), for amici curiae New York State Com'n on Quality of Care for the Mentally Disabled, and Disabled in Action.
 Before NEWMAN, PIERCE, and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 Plaintiff-appellant Jonathan Marsh, proceeding pro se, appeals from a judgment, entered in the United States District Court for the Eastern District of New York (Edward R. Korman, Judge ), dismissing his complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Marsh's complaint alleged that the defendants-appellees wrongfully excluded him from the discount fare benefits of the New York City Department of Transportation's ("NYCDOT") Half-Fare Program. According to Marsh, his exclusion from the Half-Fare Program violated the Urban Mass Transportation Act of 1964, 49 U.S.C.app. Sec. 1601 et seq. (the "UMT Act"); the Rehabilitation Act of 1973, 29 U.S.C. Sec. 701 et seq. ("the Rehabilitation Act"); his fifth and fourteenth amendment rights to due process and equal protection; and 42 U.S.C. Secs. 1983, 1985(3), 1986 and 1988. Marsh also alleged that the NYCDOT and the Metropolitan Transportation Authority ("MTA") failed to follow the public hearing procedures mandated by UMT Act section 1604(i)(3) in adopting its January 1990 fare increase.
 
 
 2
 On August 25, 1989, Marsh moved for a preliminary injunction to require, inter alia, that the NYCDOT certify him as eligible for the Half-Fare Program and that the NYCDOT and the MTA comply with the public hearing requirements of 49 U.S.C.app. Sec. 1604(i)(3). Defendants-appellees opposed Marsh's motion for a preliminary injunction and several defendants-appellees cross-moved for dismissal of Marsh's complaint pursuant to Fed.R.Civ.P. 12(b)(6). The district court, adopting a magistrate's recommendation, dismissed Marsh's complaint.
 
 
 3
 On appeal, plaintiff-appellant Marsh contends that the district court improperly dismissed his complaint. In particular, he asserts that his exclusion from the Half-Fare Program violates the UMT Act, the Rehabilitation Act, and his constitutional right to due process. Marsh also maintains that the procedures followed by the NYCDOT and the MTA in adopting their January 1990 fare increase violated the public hearing requirements mandated by the UMT Act.
 
 
 4
 For the reasons set forth below, the judgment of the district court is affirmed.
 
 BACKGROUND
 
 5
 Plaintiff-appellant Jonathan Marsh, a forty-six year old resident of Queens, New York, suffers from an undisclosed mental disability. Marsh is trained as a lawyer and has represented himself admirably in this litigation.
 
 
 6
 In 1985, Marsh orally applied for, and was denied, the benefit of discount transit fares provided to eligible persons under the NYCDOT's Half-Fare Program. According to Marsh, the stated reason for this denial was that he did not meet the applicable statutory definition of a "handicapped person" entitled to Program benefits. On September 9, 1988, Marsh submitted a written application for Half-Fare Program benefits, attaching a certification from the Social Security Administration that he is a recipient of Supplemental Security Income ("SSI"). Marsh's application was returned to him by the Program's director because it did not contain evidence that Marsh was disabled within the terms of the Program's eligibility requirements.
 
 
 7
 On July 20, 1990, Marsh filed the underlying complaint, alleging that he was wrongfully excluded from the Half-Fare Program, in violation of the UMT Act, the Rehabilitation Act, the fifth and fourteenth amendments to the Constitution, and 42 U.S.C. Secs. 1983, 1985(3), 1986 and 1988. The complaint named as defendants Samuel K. Skinner, the U.S. Secretary of Transportation, Brian C. Clymer, the Administrator of the Urban Mass Transportation Administration ("UMTA") and Leonard Braun and Brian Sternan, two regional administrators of the UMTA (collectively, the "Federal Defendants"). Additional named defendants included the MTA, the New York City Transit Authority, and Robert F. Kiley and Mortimer L. Downey, the Chairman and Executive Director, respectively, of the MTA, the New York City Transit Authority, the Manhattan and Bronx Surface Operating Authority, the Staten Island Surface Operating Authority, the Long Island Railroad, Metro-North Commuter Railroad, and the Metropolitan Suburban Bus Company (collectively, the "Transit Defendants"). Edward I. Koch, the Mayor of New York City, the NYCDOT, Ross Sandler, the Commissioner of NYCDOT, Sandra Schnur, the Director of the Half-Fare Program (collectively, the "City Defendants"), and 100 Does were also named as defendants. Marsh sought actual damages of approximately $400, as well as $10,000,000 in consequential damages, $10,000,000 in punitive damages, and injunctive relief.
 
 
 8
 The matter was referred to then Magistrate Carol Bagley Amon. On August 25, 1989, plaintiff-appellant Marsh moved for a preliminary injunction requiring the NYCDOT to certify his eligibility for the Half-Fare Program, directing the NYCDOT and the MTA to comply with the fare change hearing provisions set forth in UMT Act section 1604(i)(3), and requiring the USDOT and the UMT to enforce compliance with the hearing provisions. Marsh also requested that a special master be appointed to monitor the relief ordered by the court and that counsel be appointed to determine whether a class action should be commenced. The defendants-appellees opposed Marsh's motion. In addition, the Transit Defendants and the City Defendants moved to dismiss Marsh's complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). After conducting a hearing, the magistrate issued a Report and Recommendation which concluded that the motion to dismiss Marsh's complaint should be granted. The magistrate found that Marsh did not meet the statutory definition of a "handicapped person" entitled to discount fares under the UMT Act. Accordingly, she concluded that his exclusion from the Half-Fare Program did not violate the UMT Act, the Rehabilitation Act, or Marsh's constitutional rights to due process and equal protection. Further, the magistrate concluded that the NYCDOT and the MTA had not violated UMT Act fare change procedures in adopting the January 1990 fare increase. Because Marsh's action against the Federal Defendants depended on his claims against the Transit Defendants and the City Defendants, the magistrate recommended that the action against the Federal Defendants also be dismissed. Finally, the magistrate recommended that Marsh's motion for a preliminary injunction and for appointments be denied. Marsh timely filed objections to the magistrate's Report and Recommendation. On January 3, 1990, the district court adopted the magistrate's recommendation to dismiss Marsh's complaint and judgment was subsequently entered. This appeal followed.
 
 DISCUSSION
 
 9
 The district court may dismiss a complaint if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Green v. Maraio, 722 F.2d 1013, 1016 (2d Cir.1983) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)); see Fed.R.Civ.P. 12(b)(6). In the present case, Marsh contends that, viewing all material facts in the light most favorable to him, the district court erred in dismissing his complaint. We disagree.
 
 
 10
 I. The UMT Act Claim.
 
 
 11
 The UMT Act requires, as a condition of funding under section 9 of the Act, that recipients of federal transportation funds establish a fare discount for elderly and handicapped persons. See 49 U.S.C. app. Sec. 1607a(e)(3)(C) (1988). Specifically, section 1604(m) of the UMT Act provides that:
 
 
 12
 the rates charged elderly and handicapped persons during nonpeak hours for transportation utilizing or involving the facilities and equipment of the project financed with assistance under this section will not exceed one-half of the rates generally applicable to other persons at peak hours....
 
 
 13
 49 U.S.C. app. Sec. 1604(m) (1988); see also 49 C.F.R. Sec. 609.23 (1989). By its terms, section 1604(m) secures discount fare benefits only for "elderly and handicapped persons." Id. The UMT Act expressly defines "handicapped person" as:
 
 
 14
 any individual who by reason of illness, injury, age, congenital malfunction, or other permanent or temporary incapacity or disability, including any person who is wheelchair bound or has semiambulatory capabilities, is unable without special facilities or special planning or design to utilize public transportation facilities and services effectively.
 
 
 15
 49 U.S.C. app. Sec. 1608(c)(4) (1988) (emphasis added); see 49 C.F.R. Sec. 609.3 (1989) (" 'Elderly and handicapped persons' means those individuals who, by reason of illness, injury, age, congenital malfunction, or other permanent or temporary incapacity or disability ... are unable without special facilities or special planning or design to utilize mass transportation facilities and services as effectively as persons who are not so affected.").
 
 
 16
 Plaintiff-appellant Marsh contends that he is eligible for the Half-Fare Program, a local discount fare program administered by the Transit Defendants and the NYCDOT pursuant to the UMT Act. However, Marsh concedes that he is not a handicapped person as that term is defined by section 1608(c)(4) of the UMT Act. Unlike the persons identified by the UMT Act and the regulations promulgated thereunder, Marsh does not require "special facilities or special planning or design to utilize public transportation facilities and services effectively." 49 U.S.C. app. Sec. 1608(c)(4). Notwithstanding the express terms of the UMT Act, Marsh maintains that the definition of "individual with handicaps" contained in another statute--the Rehabilitation Act, 29 U.S.C. Sec. 706(8)(B)--should determine eligibility for Half-Fare Program benefits under the UMT Act. We disagree.
 
 
 17
 Importation of the Rehabilitation Act definition of "individual with handicaps" into a program established under section 1604(m) of the UMT Act would violate fundamental principles of statutory construction. The statutory limitation of section 1604(m) benefits to "elderly and handicapped persons" is plain and unambiguous. So too, the UMT Act's definition of "handicapped person," which is essentially restricted to individuals with "transportation" handicaps, is plain and unambiguous. Under these circumstances, we may not construe the UMT Act to require that defendants-appellees extend discount fare benefits to a person who admits that he is not a handicapped person within the terms of the statute. See Colautti v. Franklin, 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684 n. 10, 58 L.Ed.2d 596 (1979); 2A N. Singer, Sutherland Statutory Construction Sec. 47.07, at 133 (4th ed. 1984) ("Legislative declaration of the meaning that a term shall have in the same or other, acts is binding, so long as the prescribed meaning is not so discordant to common usage as to generate confusion.") (footnote omitted).
 
 
 18
 Marsh contends that the legislative history of the UMT Act reveals that Congress intended section 1604(m) benefits to be co-extensive with the Rehabilitation Act definition of "individual with handicaps" and with the eligibility requirements for SSI benefits. However, " 'only the most extraordinary showing of contrary intentions' in the legislative history will justify a departure from [the statutory] language." United States v. Albertini, 472 U.S. 675, 680, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985) (quoting Garcia v. United States, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984)). Marsh's reliance on a statement by Representative Sullivan that the UMT Act's Half-Fare provision "will make it far easier for citizens getting along on social security or disability benefits to participate more actively in the affairs of the community," 119 Cong.Rec. 32,800 (1973), is unavailing. This general statement does not support the contention that every handicapped individual, as defined by any federal statute, is entitled to Half-Fare Program benefits. Moreover, this statement, by a single legislator, is not sufficient to override the clear language of the UMT Act. See Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of America, 325 U.S. 161, 168-69, 65 S.Ct. 1063, 1067-68, 89 L.Ed. 1534 (1945).
 
 
 19
 II. The Rehabilitation Act Claim.
 
 
 20
 Marsh also asserts that denial of Half-Fare Program benefits constitutes discrimination on the basis of his mental handicap, in violation of section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 701 et seq. Section 504 provides that:
 
 
 21
 No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
 
 
 22
 29 U.S.C. Sec. 794(a) (1988). For purposes of this section, an "individual with handicaps" is defined as:
 
 
 23
 any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.
 
 
 24
 29 U.S.C. Sec. 706(8)(B) (1988).
 
 
 25
 It is uncontested that Marsh suffers from a mental impairment that places him within the statutory definition of an "individual with handicaps." However, to establish a violation of section 504, a plaintiff must prove, inter alia, that "he or she is 'otherwise qualified' to participate in the offered activity or to enjoy its benefits." Rothschild v. Grottenthaler, 907 F.2d 286, 290 (2d Cir.1990); see Southeastern Community College v. Davis, 442 U.S. 397, 403, 99 S.Ct. 2361, 2365, 60 L.Ed.2d 980 (1979). An individual with handicaps is not "otherwise qualified" unless he or she "is able to meet all of a program's requirements in spite of his [or her] handicap." Southeastern Community College, 442 U.S. at 406, 99 S.Ct. at 2367.
 
 
 26
 Marsh is not "otherwise qualified" for Half-Fare Program benefits. Under the express terms of the UMT Act, discount fare benefits are secured for only a limited category of persons defined as "handicapped persons," and Marsh does not fall within that group. Simply stated, Marsh was denied the contested benefits because he does not suffer from the type of handicap that the Half-Fare Program addresses. He was not denied Half-Fare Program benefits "solely by reason of his handicap." Southeastern Community College, 442 U.S. at 405, 99 S.Ct. at 2366. Thus, Marsh's exclusion from the benefits of the Half-Fare Program is not a violation of section 504 of the Rehabilitation Act.
 
 
 27
 III. The Constitutional Claims.
 
 
 28
 Marsh next contends that his exclusion from the Half-Fare Program violates his right to due process secured by the fifth and fourteenth amendments to the Constitution. However, Marsh has failed to demonstrate a constitutionally protected property interest deserving of due process safeguards under the fifth and fourteenth amendments. See Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). In short, because Marsh is not entitled to Half-Fare Program benefits under the applicable statutory provisions, he lacks a cognizable property interest in those benefits. Accordingly, Marsh's due process argument lacks merit.
 
 
 29
 As clarified in colloquy with the Magistrate and in Marsh's brief and argument in this Court, his equal protection claim rests on his interpretation of the UMT Act and evaporates once that interpretation is rejected. Marsh, who is trained as an attorney, has made it clear that he is not asserting the entirely different equal protection claim raised by amici curiae, which rests on the defendants' interpretation of the UMT Act. Since the amici's constitutional argument was expressly disclaimed by Marsh, we do not address that contention.
 
 
 30
 IV. The Transit Fare Increase Claim.
 
 
 31
 Finally, Marsh contends that the Transit Defendants failed to comply with the UMT Act in promulgating the fare increase that became effective in January 1990. Specifically, Marsh claims that the Transit Defendants failed to abide by section 1604(i)(3) of the UMT Act, which requires that:
 
 
 32
 any public mass transportation system receiving financial assistance under [section 1604] will not change any fare and will not substantially change any service except (A) after having held public hearings or having afforded an adequate opportunity for such hearings, after adequate public notice, (B) after having given proper consideration to views and comments expressed in such hearings, and (C) after having given consideration to the effect on energy conservation, and the economic, environmental, and social impact of the change in such fare or such service.
 
 
 33
 49 U.S.C. app. Sec. 1604(i)(3) (1988).
 
 
 34
 However, as Marsh concedes, the Transit Defendants have not received federal funds pursuant to UMT Act section 1604 since 1986. Rather, the Transit Defendants receive federal funds pursuant to UMT Act section 1607a, which requires only that a recipient certify that it "has a locally developed process to solicit and consider public comment prior to raising fares." 49 U.S.C. app. Sec. 1607a(e)(3)(H) (1988). Nonetheless, Marsh maintains that the Transit Defendants remain subject to the requirements of section 1604(i)(3) because facilities financed with section 1604 funds are still in use. We disagree.
 
 
 35
 Recipients of section 1607a funds who file a section 1607a(e)(3) certification are not required to comply with section 1604(i)(3). According to the U.S. Department of Transportation's ("USDOT") interpretation of the relevant provisions:
 
 
 36
 [T]he legislative history of section [1607a(e)(3)(H) ], which specifically relates to public comment on fare and service changes, establishes that this provision is the successor to section [1604(i)(3) ]. In other words, the requirements of section [1607a(e)(3)(H) ] were intended to take the place of the section [1604(i)(3) ] requirements.
 
 
 37
 51 Fed.Reg. 36,401 (1986). Thus, the section 1604(i)(3) public hearing requirements did not survive the termination of section 1604 funding to the Transit Defendants. Accordingly, the Transit Defendants--which filed the certification required by section 1607a(e)(3)(H)--did not violate the UMT Act in adopting the January 1990 fare increase.
 
 CONCLUSION
 
 38
 We have examined each of Marsh's remaining arguments and find them to be without merit. In light of the foregoing, we affirm the judgment of the district court.