183 F.3d 953 (9th Cir. 1999)
 CHONG YIA YANG, PLAINTIFF-APPELLANT,
v.
STATE OF CALIFORNIA DEPARTMENT OF SOCIAL SERVICES; ELOISE ANDERSON, IN HER OFFICIAL CAPACITY AS DIRECTOR OF SOCIAL SERVICES; UNITED STATES DEPARTMENT OF AGRICULTURE, DEFENDANTS-APPELLEES.
 No. 98-15507
 U.S. Court of Appeals, Ninth Circuit
 Argued and Submitted February 9, 1999
June 24, 1999
 
 1
 Michael J. Kanz, Central California Legal Services, Inc., Fresno, California, for the plaintiff-appellant.
 
 
 2
 Margarita Altamirano, Deputy Attorney General, Sacramento, California, Frank A. Rosenfeld, United States Department of Justice, Washington, D.c., for the defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Eastern District of California Robert E. Coyle, Chief District Judge, Presiding. D.C. No. CV 97-06189 REC
 
 
 4
 Before: Betty B. Fletcher and A. Wallace Tashima, Circuit Judges, and B. Lynn Winmill,* District Judge.
 
 Tashima, Circuit Judge
 
 5
 Plaintiff and appellant Chong Yia Yang ("Plaintiff"), a Laotian Hmong who fought in the Vietnam War on behalf of the United States and was subsequently admitted to the United States and granted permanent resident status, brought suit against the California Department of Social Services ("DSS"), DSS Director Eloise Anderson, the United States Department of Agriculture ("USDA"), and USDA Secretary Dan Glickman (collectively "Defendants"), after his food stamp benefits were terminated pursuant to the Welfare Reform Act of 1996.[1] Plaintiff contends that section 5566(b) of the Balanced Budget Act of 1997 restored food stamp benefits to Hmong veterans through its provision stating that it was "the sense of Congress" that Hmong veterans lawfully rgtadmitted to the United States should be excepted from certain limitations on welfare benefits imposed by the Welfare Reform Act. The district court granted summary judgment in favor of Defendants. We have jurisdiction under 28 U.S.C. S 1291 and affirm on the basis that section 5566(b) is merely a precatory sense of Congress provision, not amounting to positive, enforceable law.
 
 I. Factual and Procedural Background
 
 6
 Until the passage of the Welfare Reform Act, aliens who were lawful permanent residents, refugees, or asylees were eligible for food stamps. See 7 U.S.C. S 2015(f). Among the sweeping changes introduced by the Welfare Reform Act, however, is the provision excluding legal aliens from the receipt of public assistance unless they meet certain limited exceptions. See 8 U.S.C. S 1612(a). One of these exceptions is for noncitizen veterans. See S 1612(b)(2)(C)(i). A "veteran" is defined as "a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable. " 38 U.S.C. S 101(2). It is uncontroverted that Hmong who aided American forces during the Vietnam War are not "veterans."
 
 
 7
 In the Balanced Budget Act of 1997, Congress included the following provision at issue in this appeal:
 
 
 8
 "(a) FINDINGS. --- The Congress makes the following findings:"
 
 
 9
 "(1) Hmong and other Highland Lao tribal peoples were recruited, armed, trained, and funded for military operations by the United States Department of Defense, Central Intelligence Agency, Department of State, and Agency for International Development to further United States national" security interests during the Vietnam conflict.
 
 
 10
 "(2) Hmong and other Highland Lao tribal forces sacrificed their own lives and saved the lives of American military personnel by rescuing downed American pilots and aircrews and by engaging and successfully fighting North Vietnamese troops."
 
 
 11
 "(3) Thousands of Hmong and other Highland Lao veterans who fought in special guerilla units on behalf of the United States during the Vietnam conflict, along with their families, have been lawfully admitted to the United States in recent years."
 
 
 12
 "(4) The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Public Law 104-193), the new national welfare reform law, restricts certain welfare benefits for noncitizens of the United States and the exceptions for noncitizen veterans of the Armed Forces of the United States do not extend to Hmong veterans of the Vietnam conflict era, making Hmong veterans and their families receiving certain welfare benefits subject to restrictions despite their military service on behalf of the United States."
 
 
 13
 "(b) CONGRESSIONAL STATEMENT.--It is the sense of the Congress that Hmong and other Highland Lao veterans who fought on behalf of the Armed Forces of the United States during the Vietnam conflict and have lawfully been admitted to the United States for permanent residence should be considered veterans for purposes of continuing cer tain welfare benefits consistent with the exceptions provided other noncitizen veterans under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996."
 
 
 14
 Balanced Budget Act of 1997, Pub. L. No. 105-33,S 5566, 111 Stat. 639-640 (1997).
 
 
 15
 In August 1997, the USDA issued Administrative Notice 97-107, which characterized section 5566(b) of the Balanced Budget Act as expressing the sense of Congress that Hmong veterans should be considered veterans, but as not actually authorizing the allocation of food stamps to this group. Accordingly, the DSS notified Plaintiff, along with other Hmong veterans, that they were no longer eligible for food stamp benefits and that such benefits would be cut off on September 1, 1997.
 
 
 16
 Plaintiff applied for a hearing before the DSS. An Administrative Law Judge (ALJ) ruled that Plaintiff's federal food stamp benefits were correctly being terminated because he was a legal noncitizen between the ages of 18 and 65 who did not fall within any exception to the Welfare Reform Act. Plaintiff then filed a petition in state court to set aside the administrative decision of the DSS. Defendants removed the action to federal district court. After removal, Plaintiff filed his First Amended Petition for Writs of Mandate and Complaint for Declaratory Judgment, adding the USDA and Glickman as defendants, and stating four claims for relief: (1) for a writ of mandate pursuant to California Code of Civil Procedure section 1094.5 compelling DSS and Anderson to reverse the ALJ's decision, reinstate Yang's food stamp benefits, and restore past benefits accrued since the date of termination; (2) for a writ of mandate pursuant to California Code of Civil Procedure section 1085 to compel DSS and Anderson to rescind its policy decision that Hmong veterans were ineligible for food stamps, and to reinstate and restore food stamp benefits to Hmong veterans; (3) for a writ of mandamus under 28 U.S.C. S 1361 directing the USDA to take action to ensure compliance with section 5566 and reinstatement and restoration of food stamp benefits to qualified Hmong veterans; and (4) for a declaratory judgment pursuant to 28 U.S.C.S 2201 that Plaintiff and other qualified Hmong veterans are protected from termination of food stamp benefits under section 5566(b) of the Balanced Budget Act.
 
 
 17
 Plaintiff moved for summary judgment and Defendants moved to dismiss. The district court treated the motions as cross-motions for summary judgment. The district court found that the statute was ambiguous on its face, but that applying the accepted tools of statutory construction yielded the Conclusion that Hmong veterans were not entitled to food stamp benefits under section 5566(b) of the Balanced Budget Act. Accordingly, the court granted Defendants' motions for summary judgment on all claims and denied Plaintiff's motion for summary judgment. Plaintiff appealed.
 
 
 18
 On June 23, 1998, several months after Plaintiff had filed his notice of appeal, Congress passed the following law:
 
 
 19
 "Section 402(a)(2) of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (8 U.S.C. 1612(a)(2)) . . . is amended by adding at the end the following:"
 
 
 20
 "(K) FOOD STAMP EXCEPTION FOR CERTAIN HMONG AND HIGHLAND LAOTIANS- With respect to eligibility for benefits for the specified Federal program described in paragraph (3)(B), paragraph (1) shall not apply to -
 
 
 21
 "(i) any individual who -
 
 
 22
 (I) is lawfully residing in the United States; and
 
 
 23
 "(II) was a member of a Hmong or Highland Laotian tribe at the time that the tribe rendered assistance to United States personnel by taking part in a military or rescue operation during the Vietnam era . . .;"
 
 
 24
 "(ii) the spouse, or an unmarried dependent child, of such an individual; or"
 
 
 25
 "(iii) the unremarried surviving spouse of such an individual who is deceased.".
 
 
 26
 Agricultural Research, Extension, & Education Reform Act of 1998, Pub. L. No. 105-185, S 508, 112 Stat. 523, 579-80 (1998). Pursuant to this amendment, qualified Hmong once again became eligible for food stamps effective November 1, 1998. Therefore, Plaintiff's claims for prospective relief are now moot, and we need consider only his claims for retroactive payment of benefits for the period when his benefits were cut off, from September 1, 1997, to November 1, 1998.
 
 II. Standards of Review
 
 27
 A grant of summary judgment is reviewed de novo. See Griggs v. Pace American Group, Inc., 170 F.3d 877, 879 (9th Cir. 1999). Where, as here, the underlying facts are not in dispute, "the only question we must determine is whether the district court correctly applied the law." Tri-State Dev., Ltd. v. Johnston, 160 F.3d 528, 529 (9th Cir. 1998). We review de novo questions of statutory interpretation. See Wilderness Soc'y v. Dombeck, 168 F.3d 367, 370 (9th Cir. 1999).
 
 
 28
 III. Eleventh Amendment Immunity of DSS and Anderson
 
 
 29
 Plaintiff contends that Anderson and DSS gave "undue deference" to the USDA's erroneous interpretation of section 5566(b), and on these grounds seeks to compel the state defendants to restore past benefits. On appeal, DSS and Anderson do not assert an Eleventh Amendment immunity defense to this claim. The Supreme Court has recently clarified that "the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so . . . . Unless the State raises the matter, a court can ignore it." Wisconsin Dep't of Corrections v. Schacht, 118 S. Ct. 2047, 2052 (1998). Therefore, because DSS and Anderson have not invoked the defense of sovereign immunity with respect to Plaintiff's claim that the state should not have deferred to an incorrect interpretation of section 5566, we are not barred from hearing this claim.
 
 
 30
 Plaintiff also asserts that DSS and Anderson should have continued food stamp benefits to individuals made ineligible by the Welfare Reform Act under the authority of 7 U.S.C. S 2016(j)(1), which provides that "a State agency may . . . issue benefits under this chapter to an individual who is ineligible to participate in the food stamp program solely as a result of . . . section 1612 or 1613 of the Title 8. " Plaintiff further contends that DSS and Anderson should have awarded him state benefits pursuant to 8 U.S.C. S 1622(a), which authorizes a state to "determine the eligibility for any State public benefits of . . . a qualified legal alien . .. ." In essence, Plaintiff asserts that DSS and Anderson erred in not awarding him some form of benefits even if the USDA's interpretation of section 5566, to which they deferred, was not erroneous.
 
 
 31
 Plaintiff, however, never made this claim before the district court. No exceptional circumstance justifies the failure to raise this claim below; thus, we decline to address it.[2] See United States v. Oregon, 769 F.2d 1410, 1414 (9th Cir. 1985) ("[A]bsent exceptional circumstances, an issue not raised below will not be considered on appeal.").
 
 IV. Meaning of Section 5566(b)
 
 32
 The resolution of Plaintiff's remaining claims turns on whether section 5566 authorized food stamp benefits for Hmong veterans. In interpreting a provision, we" `look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress.' " United States v. Hockings, 129 F.3d 1069, 1071 (9th Cir. 1997) (quoting Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 830 (9th Cir. 1996)). If the provision is ambiguous, we consult the legislative history. See id. Where Congressional intent remains unclear, " `courts should defer to a reasonable agency interpretation of a statutory scheme the agency is entrusted to administer.' " Cal-Almond, Inc. v. United States, 14 F.3d 429, 448 (9th Cir. 1993) (quoting Railway Labor Executives' Ass'n v. ICC, 958 F.2d 252, 256 (9th Cir. 1991)).
 
 
 33
 Section 5566(b) provides that "[i]t is the sense of the Congress that Hmong and other Highland Lao veterans who fought on behalf of the Armed Forces of the United States during the Vietnam conflict and have lawfully been admitted to the United States for permanent residence should be considered veterans for purposes of continuing certain welfare benefits consistent with the exceptions provided other noncitizen veterans under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996." Balanced Budget Act S 5566(b) (emphasis added). The provision bears the heading "Congressional Statement." See id.
 
 
 34
 A similar sense of Congress provision was at issue in Monahan v. Dorchester Counseling Center, Inc., 961 F.2d 987 (1st Cir. 1992). In that case, the plaintiff alleged a violation of 42 U.S.C. S 10841, entitled "Restatement of Bill of Rights for Mental Health Patients." Section 10841 provides that "[i]t is the sense of the Congress that . . . each State should review and revise, if necessary, its laws to ensure that mental health patients receive the protection and services they require, and that in making such review and revision, States should take into account the recommendations of the President's Commission on Mental Health and the following. . . .' S 10841. The First Circuit found that S 10841's "use of the terms `should' and `the sense of Congress' indicate that the statute is merely precatory." Monahan, 961 F.2d at 994-95. It held that a suit could not be brought under the statute because the sense of Congress provision neither requires nor prohibits action by the states or any other party and therefore "creates no enforceable federal rights." Id. at 995. See also Trojan Tech., Inc. v. Pennsylvania, 916 F.2d 903, 909 (3rd Cir. 1990) (characterizing sense of Congress provision as persuasive appeal rather than mandatory preemption of state law); Carriage of Agric. Prod. in U.S. Vessels, 37 U.S. Op. Atty. Gen. 546, 548 (1934) (finding that Congress intended to "lay down a rule of guidance", with sense of Congress language in Joint Resolution and that provision was not mandatory).[3]
 
 
 35
 Like the sense of Congress provision at issue in Monahan, section 5566(b) couples the phrase "sense of the Congress" with the term "should," yielding the Conclusion that this provision is precatory and did not bestow on Hmong veterans any right to food stamp benefits. Further, the heading "Congressional Statement" describes section 5566(b) as a policy statement that does not create positive, enforceable law.
 
 
 36
 Plaintiff points to cases in which he argues courts interpreted sense of Congress provisions to be enforceable law. In these cases, however, the courts rely on the sense of Congress provisions to buttress interpretations of other mandatory pro visions and do not interpret them as creating any rights or duties by themselves. See Accardi v. Pennsylvania R.R. Co., 383 U.S. 225, 228-29 (1966) (finding that provision containing sense of Congress language showed "continuing purpose of Congress" already established in another law); State Highway Comm'n v. Volpe, 479 F.2d 1099, 1116 (8th Cir. 1973) (finding that sense of Congress provision "can be useful in resolving ambiguities in statutory construction" and that this particular provision "merely corroborates what . . . the statute as a whole already provides") (emphasis in original).[4] These cases, therefore, do not support Plaintiff's position that section 5566(b) itself authorizes food stamps for Hmong veterans. In the case of section 5566(b), we conclude that Congress merely intended to plant a seed for future legislation reinstating certain welfare benefits to Hmong veterans.
 
 
 37
 Our Conclusion about the intended effect of section 5566's sense of Congress provision is buttressed by an examination of the Balanced Budget Act in its entirety. To determine the plain meaning of a particular statutory provision, we look to the provisions of the entire law. See Hockings, 129 F.3d at 1071. Section 5566 is one of several provisions in Chapter Four of the Balanced Budget Act, entitled "Restricting Welfare and Public Benefits for Aliens." Another provision under Chapter Four explicitly amends the veteran exception to the Welfare Reform Act's restrictions on benefits for legal aliens. See Balanced Budget Act of 1997, Pub. L. No. 105-33, S 5563, 111 Stat. 638-39 (1997). The fact that Congress specifically amended the veteran exception of the Welfare Reform Act in the same chapter of the Balanced Budget Act containing section 5566 strongly suggests that if Congress had intended to amend the Act to make an exception for Hmong veterans as well, it would have done so explictly. See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc. , 447 U.S. 102, 109 (1980) (refusing to interpret statute to exclude FOIA disclosures partly because Congress could have explicitly excluded such disclosures as it did with other listed exemptions).
 
 
 38
 The legislative history further reinforces our Conclusion that Congress did not intend to reinstate food stamps with the sense of Congress provision. Section 5566 originally appeared in the Welfare Reform Technical Corrections Act of 1997 before it was transferred verbatim to the Balanced Budget Act. See H.R. 1048, 105th Cong. (1997). Representative Dooley spoke in support of section 5566:
 
 
 39
 "I rise today to express my continuing concern regarding the negative impact of the welfare reform bill on the Hmong veterans who served along with our soldiersduring the Vietnam war. I am pleased that the bill before us today recognizes the importance of this issue. However, the sense of Congress language does not go far enough to address the real need facing the Hmong community. I believe that every possible effort must be made to restore the benefits that were promised to these veterans."
 
 
 40
 Mr. Speaker, today we are taking a first step toward restoring benefits to this deserving group. It is imperative that we follow through on the state ment in the bill today and ensure further legislative action is taken. I am committed to working with the committee to develop a workable solution to this problem.
 
 
 41
 143 Cong. Rec. H1917-04, H1934 (daily ed. April 29, 1997) (statement of Rep. Dooley). Representative Vento made a similar statement:
 
 
 42
 "Although I was hopeful that the measure would include provisions to exempt Hmong veterans from benefit restrictions, I am pleased that the sense of Congress was included in the amendments offered. This sense of Congress would recognize the service of thousands of Hmong and other Highland Lao veterans . . . I would also state that Congress should approve legislation for the purpose of continuing certain welfare benefits for these Hmong and Highland Lao veterans based on their service to the United States."
 
 
 43
 "I believe that we must go further than this sense of Congress language to recognize the service of the Lao Hmong, however, this is an important step in the process of honoring the sacrifice of the Hmong patriots."
 
 
 44
 ". . ."
 
 
 45
 "I worked to include language in this bill that would make the treatment of Hmong veterans commensurate with that of other aliens who served in United States regular military forces. While this provision was not included, I am encouraged that this sense of Congress has bipartisan support and expresses a shared intent to amend this matter and am hopeful that this issue will be resolved in the near future to avert the August 1997 deadline."
 
 
 46
 143 Cong. Rec. H1917-04, H1935 (daily ed. April 29, 1997) (statement of Rep. Vento).
 
 
 47
 Citing Consumer Products and Marsh v. Skinner, 922 F.2d 112 (2d Cir. 1990), Plaintiff argues that these statements by legislators should not be given much weight. While the Court did note in Consumer Products that "ordinarily even the contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative history," 447 U.S. at 118, the Court was merely clarifying that a legislator's remarks cannot override the plain meaning of the statute and must be considered in light of other legislative history. Similarly, in Marsh, the court found that a statement by a single legislator does not suffice to override the clear language of an Act. See 922 F.2d at 116. Because the statements of Representatives Dooley and Vento do not conflict with the plain meaning of section 5566, but rather support it, they add to the certainty of the Conclusion that Congress did not intend to authorize benefits for Hmong veterans with the section 5566 sense of Congress provision.
 
 
 48
 Both sides attempt to glean evidence of Congress' intent in including the sense of Congress provision in the Balanced Budget Act from the legislation passed in June, 1998, amending the Welfare Reform Act to extend food stamp benefits to certain Hmong Laotians effective November 1, 1998. See Agricultural Research, Extension, & Education Reform Act S 508. We may give weight to subsequent legislation declaring the intent of an earlier enactment. See Red Lion Broad. Co. v. FCC, 395 U.S. 367, 380-81 (1969); Russ v. Wilkins, 624 F.2d 914, 924 (9th Cir. 1980).
 
 
 49
 Defendants argue that the 1998 Act would be redundant if the sense of Congress provision in the 1997 Act had already restored benefits to Hmong veterans. They further contend that Congress' decision to delay restoration of food stamps to the Hmong refugees until November 1, 1998, suggests Congress knew it was enacting a new right to benefits, not reaf firming an already existing one. Plaintiff responds that the language in the 1998 Act was included in response to the USDA's erroneous interpretation of section 5566(b) in order to clarify Congress' intent to extend benefits to Hmong veterans. He also contends that the 1998 Act was not redundant, because unlike the sense of Congress provision, the language of the 1998 Act does not require Hmong to show that they are veterans; to qualify for food stamps, a legal alien need only show that he or she was a member of a Hmong tribe at the time the tribe took part in operations to assist United States personnel during the Vietnam War. See 8 U.S.C. S 1612(a)(2)(k). Finally, Plaintiff argues that the fact that the 1998 Act was not made immediately applicable or applied retroactively suggests that Congress had intended the sense of Congress provision to restore benefits to Hmong veterans; if a right to benefits had not already existed, Congress would have made the benefits immediately available in order to meet the needs of Hmong legal aliens. As the reasonable arguments on both sides make clear, the intent of the sense of Congress provision in the Balanced Budget Act cannot be extracted from the language of the 1998 amendment to the Welfare Reform Act.
 
 
 50
 While the 1998 amendment does not itself clearly announce Congress' intent in including the sense of Congress provision in the 1997 Act, legislative history concerning the 1998 amendment does clarify the relationship between the amendment and the sense of Congress provision. Legislative history of subsequent legislation may be relevant in determining the intent of an earlier enactment, but it is entitled to less weight than actual legislation which has proceeded formally through the legislative process. See Consumer Prod., 447 U.S. at 118 n.13.
 
 
 51
 An examination of the legislative history underlying the 1998 amendment shows that with this bill Congress intended to reinstate food stamp benefits to the Hmong for the first time since the Welfare Reform Act had cut off welfare bene fits to most legal aliens. See 144 Cong. Rec. H4123-03, H4127 (daily ed. June 4, 1998) (statement of Rep. Stenholm) ("this bill fulfills a commitment made by our government during the Vietnam war to . . . the Hmongs and the Highland Laotians"); 144 Cong. Rec. S4664-03, S4679 (daily ed. May 12, 1998) (statement of Sen. McCain) ("These provisions simply restore eligibility for food stamps to certain categories of immigrants who were eligible for assistance prior to August 22, 1996 . . . . [C]ertain Hmong and Highland Laotians . . . are again eligible for food stamps."); 144 Cong. Rec. S461502, S4616 (daily ed. May 11, 1998) (statement of Sen. Harkin) ("Hmong refugees . . . who were unfairly denied food stamp benefits will once again be eligible for this important food assistance under this bill before us."). These expressions of Congressional intent provide additional support for our interpretation of section 5566(b) as not authorizing the reinstatement of food stamp benefits to Hmong veterans.[5]
 
 V. Conclusion
 
 52
 We hold that section 5566 of the Balanced Budget Act of 1997 did not restore food stamp benefits to Hmong veterans. Rather, the sense of Congress provision was a prelude to a later amendment to the Welfare Reform Act which reinstated food stamp benefits to certain Hmong refugees. In the final analysis, the sense of Congress provision amounts to no more than non-binding, legislative dicta. Accordingly, the district court's grant of summary judgment in favor of Defendants is
 
 
 53
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable B. Lynn Winmill, District Judge for the District of Idaho, sitting by designation.
 
 
 [1]
 The Welfare Reform Act is the popular name for the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 8 U.S.C. S 1612.
 
 
 [2]
 We, thus, do not reach the argument of DDS and Anderson that this new claim is barred by the Eleventh Amendment.
 
 
 [3]
 Several Supreme Court cases indirectly support the principle that sense of Congress resolutions do not have the force of law. See, e.g., Boos v. Barry, 485 U.S. 312, 327-28 (1988) (noting that proposed statute repealing District of Columbia law had been changed to sense of Congress resolution to avoid violating tenet of home rule for District of Columbia); Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 455 (1988) (finding that provision was only statement of policy in part based on remark of bill's sponsor that it was a "sense of Congress joint resolution").
 
 
 [4]
 Plaintiff also relies on several cases involving statutes with sense of Congress provisions where the Court did not engage in any explicit analysis of the sense of Congress provisions, but in which, according to Plaintiff, the Court treated the provisions as creating enforceable rights or duties. In those cases, however, the sense of Congress provisions merely expressed the general intent of Congress regarding other mandatory provisions in the same statute. See Coffy v. Republic Steel Corp., 447 U.S. 191, 195-96 & n.4 (1980) (sense of Congress provision in Vietnam Era Veterans' Readjustment Assistance Act highlighted overall intent of Act to ensure that veterans returning to workplace be restored to their previous jobs without loss of seniority); Alabama Power Co. v. Davis, 431 U.S. 581, 584 & n.7 (1977) (same); National Cable Television Ass'n v. United States, 415 U.S. 336, 337 (1974) (sense of Congress statement that services provided by federal agencies should be self-sustaining expressed policy underlying subsequent provision that authorized such agencies to prescribe fees for services).
 
 
 [5]
 Because, as the foregoing Discussion demonstrates, Congressional intent is clear, we need not consider the issue of deference to the interpretation urged by the agency entrusted with administering the statute. That principle of deference applies only when Congressional intent remains unclear after resort to the traditional tools of statutory construction. See Cal-Almond, Inc., 14 F.3d at 448.